CRAIG FUNERAL HOME, INC., Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

No. 18021.

United States Court of Appeals Fifth Circuit.

June 24, 1960.

Walter A. Shelley, Melvin Orfinger, Daytona Beach, Fla., Hawkins, Orfinger & Moore, Daytona Beach, Fla., for appellant.

Marion R. Shepard, Jacksonville, Fla., Marion R. Shepard, Mathews, Osborne & Ehrlich, Jacksonville, Fla., of counsel, for appellee.

Before RIVES, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This is an appeal from an order of the district court setting aside a jury verdict and judgment for an insured and entering a final judgment for the insurer. We reverse and direct that a judgment be entered on the verdict.

The case is before this Court for the second time. See Craig Funeral Home, Inc. v. State Farm Mutual Auto Insurance Company, 5 Cir., 1958, 254 F.2d 569.

The plaintiff-appellant, Craig Funeral Home, Inc., operates a funeral home in St. Augustine, Florida. The appellee, State Farm Mutual Auto Insurance Company, issued a standard automobile liability insurance policy, protecting the insured up to $50,000/$100,000, covering the Funeral Home's Chrysler four-door passenger sedan.

In March 1954 Mrs. Frances Roy of St. Augustine ordered an automobile from Craig Funeral Home so that she could visit her husband who was confined in an institution for mental patients in Jacksonville. Mrs. Roy testified that she anticipated the possibility of Mr. Roy returning with her to St. Augustine. She requested a passenger automobile instead of an ambulance because once before her husband had refused to ride in an ambulance. Accordingly, Craig Funeral Home sent its Chrysler sedan and a chauffeur to drive Mrs. Roy to Jacksonville and back to St. Augustine.

Mrs. Roy was not able to have her husband released. On her return trip Mrs. Roy was injured in an automobile accident. She sued the owner of the other vehicle and Craig Funeral Home. State Farm Mutual refused to defend the suit and denied liability under the terms of the policy. Craig Funeral Home paid one-half of the damages awarded Mrs.

Roy and then sued State Farm Mutual to recover this amount plus attorney's fees and costs. The court below dismissed the complaint for failure to state a claim upon which relief could be granted. On the first appeal, this Court held that the complaint stated a cause of action, reversed the dismissal, and remanded the cause for trial on the merits. 254 F.2d 569.

In a pre-trial stipulation the parties agreed on $21,902.57 as the sum Craig Funeral Home should recover if the jury returned a verdict in its favor. At the close of the evidence, each party made a motion for a directed verdict. The trial judge denied Craig Funeral Home's motion, reserving his ruling on State Farm Mutual's motion. The case was submitted to the jury under instructions not objected to by either of the parties. The jury returned a verdict in favor of Craig Funeral Home for the amount stipulated and judgment was entered on the verdict. State Farm Mutual moved for a new trial or for a judgment notwithstanding the verdict, under Rule 50(b) F.R.Civ.P., 28 U.S.C.A. On this motion, the district judge "reopened and set aside" the jury verdict and judgment for Craig Funeral Home and entered a final judgment for State Farm Mutual.

## I.

The insurance policy in question contains this relevant exclusion:

> "This policy does not apply: (a) Under any of the coverages while the automobile is rented, leased, used as a public or livery conveyance, or used for carrying persons for charge (the transportation on a share basis in a private passenger automobile of friends, neighbors, fellow employees to and from work, or school shall not be deemed carrying persons for a charge), unless such use is specifically declared and described in this policy and premium charged therefor."

The following endorsement, however, is attached to the policy:

> "Funeral Director Endorsement.
>
> "In consideration of the premium at which the policy is written it is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies with respect to the automobiles of the private passenger type, classified as a 'funeral car', subject to the following provisions:
>
> "1. The definition of 'insured' agreement of the policy applies to the insurance under this endorsement in the same manner as though the automobile were classified as 'pleasure and business', and
>
> "2. While the automobile is used (a) for passenger-carrying purposes incidental to the named insured's business as funeral director, but not otherwise for the carrying of persons for a consideration, or (b) for 'pleasure and business' purposes as defined in the policy, and
>
> "3. While the automobile is used for carrying the minister or priest in a funeral procession or in connection with funeral arrangements provided no specific charge is made therefor."

The first appeal turned on the construction of the phrase, "incidental to the named insured's business as funeral director". [254 F.2d 572.] Judge Tuttle, relying on Associated Indemnity Corp. v. Manning, 9 Cir., 1939, 107 F.2d 362, defined the test of coverage in this action as "what is in the scope of, or incidental to, the business of the particular named insured; not what is in the scope of * * * the funeral director business in the abstract." Judge Tuttle, speaking for the majority, construed the policy "as covering the carriage of Mrs. Roy if, as alleged, this carriage in the Chrysler automobile was in fact incidental to the business of the Craig Funeral Home, Inc." Judge Rives, concurring specially, recognized that the words "as funeral director" modify the expression "the named insured's business", but stated:

"Even so * * * a jury might properly have concluded that the use of the automobile when the accident occurred was 'incidental to the insured's business as funeral director'." Judge Jones dissented on the ground that the "business of a funeral director must have * * * a direct relationship to the disposition of human bodies after death".

The sole issue before the jury was whether Mrs. Roy's trip to Jacksonville and return to St. Augustine was incidental to the insured's business as a funeral director. The jury's verdict amounted to a determination that the trip was incidental. The district judge set aside the verdict for two reasons: (1) at the time of the accident the automobile was being used as a "for hire" vehicle within the exclusion clause of the policy and was not being used for a purpose within the coverage of the funeral director endorsement; (2) at the time of the accident the use of the automobile was illegal under Florida law because the car was not properly licensed, and such *illegal* use could not be incidental to the *lawful* business of the insured.

## II.

On the first appeal of this case a majority of this Court regarded the question at issue as one necessarily involving a factual decision. The Supreme Court of the United States has again and again stressed the importance of the reviewing court's refraining from upsetting a jury verdict in a civil suit turning on a disputed factual question. See Jacob v. City of New York, 1942, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166. In Wright v. Paramount-Richards Theatre, 5 Cir., 1952, 198 F.2d 303, 307, reversing the district court's judgment n. o. v., this Court, through Judge Rives, stated:

"'[I]t is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select

from among conflicting inferences and conclusions that which it considers most reasonable. [Cases omitted] That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.'"

See the following cases in which the Supreme Court, in per curiam opinions, reversed this Court: Gibson v. Phillips Petroleum Co., 1956, 352 U.S. 874, 77 S. Ct. 16, 1 L.Ed.2d 77, reversing 5 Cir., 232 F.2d 13; Swafford v. Atlantic Coast Line R. R., 1955, 350 U.S. 807, 76 S.Ct. 80, 100 L.Ed. 725, reversing 5 Cir., 220 F.2d 901; Williams v. Carolina Life Ins. Co., 1954, 348 U.S. 802, 75 S.Ct. 30, 99 L.Ed. 633, reversing 5 Cir., 210 F.2d 477.

■ On appeal from a judgment n. o. v. the reviewing court must assume the evidence in favor of the verdict to be true. If there is any substantial evidence to support the verdict, or any inference reasonably to be drawn from the evidence that would support the verdict, the judgment n. o. v. must be reversed. Marsh v. Illinois Cent. R. Co., 5 Cir., 1949, 175 F.2d 498; Audirsch v. Texas & Pacific Ry. Co., 5 Cir., 1952, 195 F.2d 629; Foreman v. Texas & New Orleans R. Co., 5 Cir., 1953, 205 F.2d 79; Tedder v. Merchants & Mfgrs. Ins. Co., 4 Cir., 1958, 251 F.2d 250; Kippen v. Jewkes, 10 Cir., 1958, 258 F.2d 869. It is necessary to scrutinize the record in the light of this principle.

## III.

Craig Funeral Home operated three types of vehicles: (1) hearses; (2) ambulances, and (3) two private passenger cars, a Chevrolet and the Chrysler insured by State Farm Mutual. The private passenger cars were used for a variety of purposes directly connected with the funeral business: to pick up friends and relations at the Home and

take them to the cemetery, to take such persons to the train, to transport the minister in the funeral procession, and for similar purposes related to funerals.

The passenger cars were used also to convey ambulatory patients to and from hospitals. This was a regular service furnished by the Craig Funeral Home. Mrs. M. J. Mance, an ambulatory patient with a broken arm, testified that Craig Funeral Home transported her to the hospital in Jacksonville. After she stayed in the hospital four weeks, a Craig Funeral Home car drove her back to St. Augustine. For the next three weeks a Craig Funeral Home car drove her to Jacksonville once or twice a week.

Two doctors testified that many ambulatory patients were transported in the private cars of the Craig Funeral Home when the condition of the patients did not warrant the use of a conventional ambulance or when the use of an ambulance might frighten or excite the patient. One of the doctors, Dr. Herbert E. White, Chief of the Surgical Service at Flagler Hospital in St. Augustine, testified that Craig Funeral Home often furnished ambulance service, including oxygen for an emergency. The passenger cars were air conditioned and were therefore desirable in transporting patients with certain illnesses, especially patients with cardiac conditions.

Thirteen sets of records of the Craig Funeral Home were introduced in evidence. These show that the books for the funeral business were separate from the books for the ambulance service. When private passenger cars were used to transport persons to the hospital, the trips were recorded in the ambulance service record book. The charge for a trip from St. Augustine to Jacksonville was ten dollars, whether the trip was in connection with a funeral or for transporting a sick person to a hospital. If the cars were used to transport ambulatory patients within the limits of St. Augustine, the charges varied from three dollars to five dollars. There were no separate charges for local trips in connection with a funeral; the overall funeral price included local trips.

Successful undertakers are not finicky. Macabre as it may be, undertakers are not unaware that persons ill enough to be transported to a hospital are likely subjects for funeral services. It is therefore good business for a funeral home, and directly related to funeral directing, for an undertaker to operate an ambulance service.

A. H. (Gus) Craig, the vice-president and business manager of Craig Funeral Home, testified: "The relationship between doing this type of service and a funeral home is this: If I have in my car a man, or a woman, husband or wife, that is very sick and I take them to the hospital in that car and they don't need an ambulance and they pass away at the hospital, I stand a pretty good chance of getting them." He testified that Mr. Roy was expected to die. This was enough for the jury to infer that transporting Mrs. Roy to Jacksonville, with the possibility of her husband's returning with her, rendered the trip incidental to the insured's business as a funeral director.

The furnishing of ambulance service by an undertaker, especially in a small town or in a city of moderate size, tends to create community good will in favor of the undertaker. The success of a funeral business is as dependent as any other business on creating and maintaining the good will of customers and potential customers. In addition to the ambulance service, Craig Funeral Home performed a number of services in St. Augustine related to its main business that had no direct connection with the disposition of human bodies after death. Craig's employees served as first-aid men, helping the police and assisting in hospital emergency rooms; they furnished oxygen to those in need of it; they visited elderly women in their homes, assisted them downstairs, and helped them return upstairs.

The instructions to the jury, if at all favorable to either party, were favorable

to the insurer. The trial judge pointed out that there was evidence that Craig Funeral Home conducted two businesses at the same location, the business of a funeral director and the business of supplying ambulance service. He instructed the jury that if the trip during which Mrs. Roy was injured was simply incidental to the business of the ambulance service the plaintiff should not recover. He did, however, instruct the jury that the trip might be incidental to both types of businesses and, if it were incidental to both, the plaintiff should recover.

■ We hold, on the record, that there was substantial evidence to allow the jury to conclude that Craig Funeral Home's furnishing of an automobile for Mrs. Roy was incidental to the insured's business, as a funeral director or incidental to both the business of funeral directing and furnishing ambulance services.

## IV.

The district judge's order granting the judgment n. o. v. states that "the use to which the vehicle was being put at the time of the accident was illegal under Florida law * * * and such illegal use cannot be found to be 'incidental' to the lawful business of the plaintiff * * *." The question of illegal use introduced an issue into the case not presented to this Court in the former appeal.

Hearses and ambulances owned and operated by Craig Funeral Home were licensed with a "K-series" tag. The Chrysler and Chevrolet passenger automobiles were licensed with a "W-series" tag, the license for ordinary passenger automobiles. Chapter 323 of Florida Statutes, 1953, F.S.A., requires that a "for hire" vehicle be licensed as such and that the owner obtain a certificate of public convenience and necessity or permit from the Railroad Commission. Section 323.29 makes this specific exemption: "Casual or irregular trips by motor vehicles not engaged in the business of for hire carriage but operated under private license shall not subject

such motor vehicles to the provisions of this chapter so long as such motor vehicles may not lawfully be required to operate under 'for hire' license tags." Chapter 320.01(16) defines "for hire" vehicles, but provides that the following shall not be deemed as operating "for hire"; "hearses and ambulances when operated by licensed embalmers and morticians, their agents and employees in this state."

It is clear enough under the language of the statute that the hearses and ambulances operated by Craig Funeral Home were not required by Florida law to carry a "for hire" license or to obtain a certificate of public convenience and necessity. But the statute is not clear as to whether private passenger automobiles making trips as an incident of the insured's funeral business must meet the requirements of "for hire" vehicles. The insurer relies on State ex rel. Coats v. Whitaker, 1936, 126 Fla. 543, 171 So. 521; State ex rel. Kelley v. Ramsey, 1936, 132 Fla. 647, 181 So. 885; Coleman v. Achim, 1934, 114 Fla. 89, 153 So. 96. Coats v. Whitaker involved a truck owner charged with violation of the Florida licensing and permit requirements. The Supreme Court of Florida held that although the truck owner's transportation of agricultural products from the point of production to the point of transshipment was an operation exempt from the licensing requirements of a "for hire" vehicle, his return trip, in which he hauled fertilizer for compensation, was not exempt and could not be made under a private license without violating the law. Kelley v. Ramsey held that a taxicab operator, licensed to operate a cab in Tallahassee, Florida, was required to obtain a certificate of public convenience and necessity in order to transport a group of college girls to the University of Florida in Gainesville, Florida. Coleman v. Achim was a case in which an automobile owner operating under a private license transported passengers from Miami, Florida to Hemp, North Carolina for compensation. The Court held that he was not exempt from the provi-

sions of Florida law requiring the certificate of public convenience and necessity although the state could not prove he had engaged in previous trips of that nature or intended to make similar trips in the future. These cases were habeas corpus proceedings arising out of criminal violations. Aside from the question of applicability of a criminal case, turning on its own particular facts, to a civil case concerning the coverage of an insurance policy, we find these cases inconclusive. They did not concern the question of whether a private passenger automobile is required to have a "for hire" license or a certificate of public convenience when it is used to transport passengers for compensation on trips incidental to the funeral business.

State Farm Mutual carries the burden of proving the illegality of the trip in question. As pointed out, the statute does not clearly require that automobiles used incidentally to the funeral business bear "for hire" licenses. Nor do the cases require this. On the other hand, administrative authorities of Florida have indicated that private passenger cars used as an incident of funeral or ambulance service need not obtain "for hire" license tags. An opinion of the Attorney General of Florida, a copy of which is in the record, addressed to the Motor Vehicle Commissioner, the Florida official responsible for enforcement of the licensing laws states: "In your letter you advise that the Motor Vehicle Commission, in view of Section 320.08. Florida Statutes [F.S.A.], which provides that motor vehicles constructed and designed for an exclusive use such as hearses and ambulances, will be issued 'K' series tags, and because of this provision the motor vehicle commissioner has taken the position and authorized the issuance of regular passenger car private tags for vehicles owned and operated by funeral directors and used incidental to their business." Concurring in the Commissioner's construction, the Attorney General continues: "In view of the authority granted to the motor vehicle commissioner by the Legislature in the Stat-

ute, and the weight given to administrative interpretation by the Courts, it would appear that the question is largely one of fact and the determination by the motor vehicle commissioner after a determination of the facts will not be disturbed."

The Supreme Court of Florida has declared that administrative interpretations of a statute by state officials charged with its enforcement or interpretation, although not controlling, are entitled to great weight and will not be departed from by the courts except for the most cogent reasons. Green v. Stuckey's of Fanning Springs, Fla.1957, 99 So.2d 867; Wilkes & Pittman v. Pittman, Fla.1957, 92 So.2d 822; Gay v. Canada Dry Bottling Co., Fla.1952, 59 So.2d 788. We feel that we should accept the administrative interpretation of Florida law as not requiring a private passenger sedan to be licensed as a "for hire" vehicle when it is being used to transport a passenger for compensation on a trip incidental to the funeral business.

The judgment notwithstanding the verdict must be reversed and the cause remanded with directions to enter judgment on the verdict.

Reversed and remanded.