558 F.2d 769
 96 L.R.R.M. (BNA) 2205, 82 Lab.Cas. P 10,111
 John H. LOWE, Plaintiff-Appellant,
v.
PATE STEVEDORING CO., a corporation, Local 1402 of the
International Longshoremen's Association, AFL-CIO
and the International Longshoremen's
Association, Defendants-Appellees.
 No. 76-2369.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 1, 1977.
As Corrected on Denial of Rehearing and Rehearing En Banc
Dec. 5, 1977.
 
 Simson Unterberger, Tampa, Fla., for plaintiff-appellant.
 Frank E. Hamilton, Jr., James B. Loper, Tampa, Fla., for Local 1402 of Intern. Longshoremen's Ass'n, AFL-CIO.
 Lucius M. Dyal, Jr., Charles P. Schropp, Tampa, Fla., for Pate Stevedoring Co.
 Appeal from the United States District Court for the Middle District of Florida.
 Before THORNBERRY, GODBOLD and FAY, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 Plaintiff, John H. Lowe, filed a complaint against Pate Stevedoring Company (Pate), and Local 1402 of the International Longshoremen's Association, AFL-CIO (Union), alleging that Pate unjustifiably discharged him and that the Union breached its duty of fair representation in processing his grievance. Lowe invoked jurisdiction pursuant to Section 301(a) of the National Labor Relations Act, as amended, 29 U.S.C. § 185(a). See Vaca v. Sipes, 386 U.S. 171 (1967). The jury returned a verdict in favor of Lowe, finding that Pate had discharged him without just cause, that his damages were $25,500, and that Pate was responsible for 33% and the Union for 67%. The trial court then entered a judgment notwithstanding the verdict in favor of defendants. That action forms the crux of the appeal, though both Pate and the Union bring up other points. We reverse.
 
 
 2
 Pate Stevedoring employed plaintiff at the loading facilities of International Minerals and Chemical Corporation at Port Sutton on the eastern shore of Tampa Bay. The actual employment arrangement was that termed the "hiring hall" in the trade. The Union and its supervisors "shaped" or formed gangs of longshoremen which they sent to the employer (Pate) on a daily basis to load or discharge cargo on the vessels. The evidence indicated that in the case of Lowe's "gang", there was a "special arrangement" whereby he and other members worked on a regular basis for Pate. In any event, Lowe had worked for Pate in Tampa since 1970. Clayton "Mississippi" Anderson was the Union "Header" of Lowe's gang. On Sunday, February 17, 1974, Lowe sprained his ankle, and from that day until Friday, February 22, 1974, Anderson did not call Lowe. On the twenty-second, plaintiff attacked Anderson, pushing or knocking him to the ground without real provocation.[1] Anderson required no medical attention. Pate's president verbally informed Lowe on March 5, 1974, that Pate would not rehire him because he was a troublemaker and shirked work responsibilities. Lowe sent a letter to the Union's president a week later, requesting an investigation of his discharge. The Union declined.
 
 
 3
 The trial judge's reversal of the jury determination of no just cause for dismissal precipitates Lowe's only point on appeal; i. e., whether the trial court erred in granting appellees' Motions for Judgment N. O. V. on the ground that there was "just cause" as a matter of law.[2]
 
 
 4
 After determining that the employer must show just cause, despite the absence of a "just cause" provision in the collective bargaining agreement,[3] the judge asked the jury to find whether or not Lowe's discharge was without just cause. He then overturned the jury verdict of no just cause because he believed that some acts, including assaulting a supervisor, are now "universally recognized as constituting 'just cause' per se." (App. 26-27). He cites three labor arbitration decisions, but they do not necessarily support his position. At most, they stand for the rule that assault of a supervisor makes out a prima facie case for finding just cause for discharge, but that numerous mitigating circumstances can destroy that prima facie case.
 
 
 5
 The first case cited, General Telephone Co., 44 L.A. 499 (1965), did involve proper employee dismissal. However, the arbitrator in his decision noted that "strong mitigating factors" might swing the decision the other way, and concluded by stating that fact-finders should consider each such incident in light of all the particular surrounding circumstances. 44 L.A. 499 at 501. Indeed, the arbitrator did just that in the same case. He held that another employee was improperly discharged despite his having struck a fellow worker.[4] The second case, American Motors Corp., 52 L.A. 332 (1968), supports the district judge better than the others. There the employer discharged the employee after the latter assaulted his foreman on the employer's parking lot. No statement appears in the case, however, implying that discharge is always mandated in assault cases. Finally, the arbitrator in Ford Motor Co. of Canada, Ltd., 56 L.A. 1245 (1971) also upheld the discharge of an employee after an assault. He stressed the severity of the attack during which the supervisor was knocked unconscious. His injuries, which included a broken eye socket (area) bone and profuse bleeding, necessitated emergency hospital care. In contrast, the supervisor in the instant case, although knocked to the ground, suffered no injuries and required no medical attention of any kind.
 
 
 6
 Other labor arbitration cases[5] demonstrate that arbitrators do not hold that an assault on a supervisor alone is enough to create just cause, but rather that they consider the act in light of all surrounding facts and circumstances. For example, in Columbus Auto Parts Co., 50 L.A. 258 (1968), the arbitrator determined that the company could not discharge the employee but instead could merely suspend him up to two calendar months. The mitigating factor in that decision was the location and timing of the incident off company premises and after working hours. The assault in the instant case is distinguishable since it occurred on the business premises, but the point of Columbus Auto Parts is that a bare assault, with no other considerations, does not necessarily require discharge. The arbitrator in A&M Metal Casket Co., 55 L.A. 835 (1970), also decided that the company could not discharge the employee after his assault on the company's President. In that decision, a crucial factor was that the President had provoked the assault by calling the employee something to the effect of "lying son-of-a-bitch."[6]
 
 
 7
 We glean our standard of review from a reading of Craig Funeral Home v. State Farm Mutual Auto Ins. Co., 280 F.2d 337 (5 Cir. 1960) and Boeing Co. v. Shipman, 411 F.2d 365 (5 Cir. 1969). Boeing holds that if there is evidence of such quality and weight that reasonable men might reach different conclusions, the jury should decide the question. 411 F.2d 337 at 374. It is the function of the jury to weigh conflicting evidence and inferences, and determine the credibility of the witnesses. 411 F.2d at 375. Craig states more specifically the function of the appellate court after the jury has reached a verdict. Judge Wisdom remarks that the appellate court must assume the evidence in favor of the verdict to be true. If there is any substantial evidence to support the verdict, or "any inference reasonably to be drawn from the evidence that would support the verdict, the judgment n. o. v. must be reversed." 280 F.2d 337 at 340.
 
 
 8
 No factual dispute exists as to the assault's occurrence, but there are enough surrounding circumstances to enable a jury to believe reasonably that this particular assault was not so egregious as to require discharge. The jury heard, for example, ample testimony that fights of this kind, and even far more severe, were common occurrences on the Tampa wharves. (App. 70, 139-41, 178-80). Indeed, even a witness for defendants admitted that he was convinced the parties were just "playing" and "horsing around", until he saw the supervisor on the ground. At that point the altercation ended. (App. 164). The President of the Union himself testified that he had struck employees with the butt of a gun, and that knifings, shootings, and baseball bat beatings were not uncommon. (App. 178-80). In the instant case, Lowe had no weapons but his (admittedly potent) hands. Further, Lowe had maintained a four-year perfect record that included no other negative incidents. His "header" had praised him as a good worker and testified at trial that Lowe had never disobeyed his orders and always completed his job quickly. (App. 156). Co-workers agreed that Lowe had never caused trouble or shirked his work. (App. 97-98, 105-07).
 
 
 9
 There is evidence to support the jury determination of no "just cause." We disagree with the trial judge that labor arbitration cases demonstrate that an attack on a supervisor is universally recognized as "just cause" per se. Here, the employee's perfect record and the relative insignificance of the altercation, especially in terms of bodily injury, in the context of the common knifings, shootings and baseball bat beatings on the Tampa wharves, provide a basis for the jury verdict.[7] Certainly there is enough evidence to demonstrate that reasonable jurors could differ over whether this assault, in its context, created "just cause" for discharge. We hold that the issue is a classic jury question, and thus reverse and remand for the district court to enter a judgment in accordance with the jury verdict.
 
 
 10
 REVERSED AND REMANDED.
 
 
 11
 FAY, Circuit Judge, dissenting.
 
 
 12
 The majority opinion shocks me and I respectfully dissent. Today, this Court stamps as legally permissible a criminal assault by a longshoreman upon his supervisor because knifings, shootings and baseball bat beatings occur with regularity on the Tampa wharves. If the unprovoked, malicious assault of a supervisor is not "just cause" for a management decision to eliminate the attacker from that supervisor's "gang", I missed a turn in the road.[1] If it is not "universally recognized as constituting 'just cause' per se" it should be! Whether Clayton Anderson required hospitalization should make no difference. This resulted from the fortuitous presence of other workers and not from any lack of effort by Lowe. John Lowe should be punished for the crime he admits committing. Instead our judicial system rewards him with $25,500.
 
 
 13
 It is the function of the court to rule on matters of law just as the trial judge did in this instance. No dispute exists as to the circumstances surrounding Lowe's attack. In my humble opinion, the function of our courts is to prevent just such conduct and no intellectual semantics can change the basic wrong we are fostering.
 
 
 
 [1]
 Lowe had been drinking and was presumably irritated because Anderson had not called him
 
 
 [2]
 Although they have not filed cross-appeals, both appellees urge alternative theories in support of the judgment. In such circumstances a cross-appeal is not necessary. United States v. American Ry. Express Co., 265 U.S. 425, 44 S.Ct. 560, 63 L.Ed. 29 (1924); Spurlin v. General Motors Corp., 531 F.2d 279, 280 (5 Cir. 1976) (on petition for rehearing); B. Ward & J. More, 9 Moore's Federal Practice p 204.11
 Pate Stevedoring argues that ist refusal to rehire Lowe was a right that the collective barganining agreement guaranteed the company. We think the district court properly rejected the contention for the reasons stated in footnote 3, infra. Both Pate Stevedoring and the Union also argue that the Union did not breach its duty of fair representation in refusing to process Lowe's grievance. See Baca v. Sipes, 386 U.S. 171, 87 C.ct. 903, 17 L.Ed.2d 842 (1967). The jury dtermined that the Union did breach its duty, but the district court did not address this finding in its order granting appellees' motions for judgment n.o.v. Although the evidence on this issue is conflicting, our review of the record convinces us that the jury, fer weighing the credibility of the witnesses, culd reasonably have concluded that the union processing Lowe's grievance. Such perfunctory treatment of a grievance constitutes a breach of the duty of fair representation. Harris v. Chemical Leaman Tank Lines, 437 F.2d 167 (5 Cir. 1971); Turner v. Air Transport Dispatchers, 468 F.2d 297 (5 Cir. 1971); DeArroyo v. Sindicato De Trabadajores, 425 F.2d 281 (1st Cir. 1970). Where, as here, a factual issue superfunctory handling of a grievance takes on increased importance. Compare Turner v. Air Transport Dispatchers, supra (only dispute involved interpretation of collective bargaining agreement, a non-factual issue that required no investigation by union). In the instant case, Lowe raised a factual issue in his letter to the union, in which he sought investigation into the reasons for his dismissal and contended thatcharges of his troublemaking and failing to do his work were untrue. (App. at 29).
 
 
 [3]
 We uphold the district court's conclusion of law that "a 'just cause' limitation upon the employer's right to discharge its employees should be inferred as a part of the basic fabric of the collective bargaining agreement." (App. 23). It was as a consequence of the "hiring hall" arrangement (including the daily "shaping" of gangs) that the collective bargaining agreement did not contain the usual provision requiring "just cause" for the dismissal of any covered employee. Since employees are routinely hired each day as needed, there would be no occasion for the employer to "discharge" in the usual sense. The judge noted that even assuming that Lowe's particular gang was different (hired on a more regular basis), the just cause limitation should be implied because the agreement applied to all gangs
 
 
 [4]
 The arbitrator cited the employee's good six-year record and the presence of a provocative remark to support his determination that suspension for a set time, but not discharge, was the appropriate disciplinary action. Note, however, that the offense there was striking a fellow worker, not a supervisor
 
 
 [5]
 The parties also took issue on the weight that a district court should place on these labor arbitration decisions. Only a small percentage of them are published, both parties have to agree to their publication, and the arbitrators themselves do not consider the decisions of their colleagues to be dogma. On the other hand, these decisions are sometimes used as guidelines for the arbitrators, and for that matter, few judges consider the opinions of other judges to be dogma. We utilize them here because the district court cited only labor arbitration cases to support his position that assaulting a superior is just cause for discharge as a matter of law. (App. 27)
 
 
 [6]
 See also International Paper Co., 52 L.A. 1266 (1969) (no discharge even though employee slashed foreman with a knife, requiring 200-400 stitches); Sunstrand Corp., 46 L.A. 346 (1966) (temporary suspension only, though altercation had roots in the employment relation: good 10-year record and attack not entirely without provocation)
 
 
 [7]
 Contrary to the dissent's accusations, neither we nor the jury have approved of knifings, shootings, and baseball bat beatings at any place or at any time. As we understand the law, we are simply unable to take the question here away from the jury, and the dissent does not cite any law that would allow us to do so
 
 
 [1]
 The majority speaks in terms of discharge. The uncontradicted facts shown by the record are that Pate did not discharge Lowe. He lost his position in Anderson's "gang". Lowe was allowed to work in other "gangs" under different "headers" on Pate jobs handled through the same Union "hall"