**Jesus GUZMAN, Plaintiff,**

v.

**SAFEWAY STORES, INC. and Local Union # 663 United Food and Commercial Workers International Unions, Defendants.**

**No. EP–81–CA–49.**

United States District Court,
W. D. Texas,
El Paso Division.

Oct. 7, 1981.

Richard A. Mendoza, El Paso, Tex., for plaintiff.

Allen Butler, Dallas, Tex., and Charles High, El Paso, Tex., for Safeway Stores, Inc.

Ben Endlich, El Paso, Tex., for Local Union # 663 United Food and Commercial Workers Intern. Unions.

## MEMORANDUM OPINION AND ORDER

HUDSPETH, District Judge.

What began as an amateur bout between a checker and a checkee has now found its way into a major arena, to wit: the United States District Court. In the original bout, Plaintiff Jesus Guzman effected a knockdown of one Antonio Martinez, but his employer, Defendant Safeway, terminated his employment, cutting short a promising career. That termination and its aftermath, including Plaintiff's experiences with his own union local, give rise to this lawsuit. Defendants, aggressive from the opening bell, have filed motions for summary judgment, and Plaintiff has answered those motions. The Court must now decide whether to let the fight continue.

## I.

Plaintiff was employed by Defendant Safeway from June 15, 1974, until his termination on September 10, 1980. He held the position of full-time food clerk at Defendant's Store No. 16 in El Paso. On or about August 24, 1980, while doing his personal shopping as a customer in another Safeway Store, Plaintiff became involved in a fight with at least one on-duty Safeway employee. There is some disagreement as to the circumstances attending the fight. Plaintiff's version holds that Antonio Martinez, a grocery checker, started the fight by striking Plaintiff with an internal communications device. This incident arose out of an argument between Martinez and Plaintiff over which checkout line Plaintiff should use. Plaintiff also claims that a second on-duty Safeway employee, Robert Gonzalez, immediately following the attack by Mr. Martinez, grabbed Plaintiff from behind and began pulling at his neck, forcing him to the floor. Upon release from the grasp of Mr. Gonzalez, Plaintiff endeavored to communicate his version of the incident to Jesus Campos, a Safeway supervisor. Plaintiff then observed Mr. Martinez approaching him with clenched fists at his side. To preempt any further assault, Plaintiff landed a blow of sufficient force to knock Mr. Martinez to the floor. Plaintiff then apologized to Mr. Campos for his role in the incident and left the premises.

The altercation was reported to James Hutton, Safeway Stores' Employee and Public Relations Manager for the El Paso Division. A subsequent investigation resulted in the termination of both Plaintiff and Mr. Martinez in early September. In effect at the time of the incident was a store rule concerned with "Employee Conduct and Manners Use of Disrespectful Language." The rule provided, *inter alia*, that "[a]ny" employee engaged in fighting on company premises, or directing verbal abuse at other employees or customers, shall be immediately terminated." Both Defendants argue that it has been the consistent policy of Safeway to discharge all employees who become involved in fights on company premises, and that Plaintiff and Mr. Martinez were terminated pursuant to this rule and practice. The record does not reflect any action taken with respect to Mr. Gonzalez.

Defendant Local # 663 took the following actions in response to the situation: Two or three days after the fight, Agustin Estrada, the Union business agent, personally investigated the incident. Mr. Estrada spoke with Alvin Dobard and Mr. Gonzalez at Store No. 23, and both indicated that Plaintiff instigated the fight. These witnesses further suggested that Plaintiff may have been under the influence of alcohol while in Store No. 23 on August 24. Mr. Estrada's findings were reported to Union President Tommy Blair. Upon his dismissal on September 10, Plaintiff timely filed a grievance with the Union. The grievance was forwarded by Mr. Blair to Paul Johnson, a Safeway Branch Manager. Denial of the grievance petition followed in due course. Plaintiff and Defendants disagree as to whether Plaintiff's grievance was presented to the Union's Executive Board. Defendant Union claims that on November 3, 1980, the Executive Board addressed the question of whether to arbitrate Plaintiff's grievance and, after due consideration, voted against taking the matter to arbitration. Defendant Local # 663 further claims that the Union membership ratified the Board's action by approval of the Board's minutes at a subsequent membership meeting. Plaintiff disputes the foregoing account, and claims that he was informed on November 17, 1980, by George Duran, a Union Board member, that his grievance "had not gone before the Board." Plaintiff also maintains that he "never received any news of any kind" concerning the Union's processing of his grievance from Union President Blair. Indeed, Plaintiff claims he did not receive any information or notification regarding the disposition of his grievance until his attorney spoke with Mr. Blair by telephone in December 1980. On February 24, 1981, Plaintiff filed this suit, charging Defendant Safeway with wrongful discharge and Defendant Local # 663 with breach of its duty of fair representation.

## II.

Voluminous reported decisions have given content to the duties and obligations owed by the Defendants herein. The National Labor Relations Act, § 9(a), 29 U.S.C. § 159(a), confers upon a duly elected union the authority to act as exclusive collective bargaining representative for an appropriate bargaining unit. *See Sanderson v. Ford Motor Co.*, 483 F.2d 102, 109–110 (5th Cir. 1973). The corollary of this union representative authority is the duty imposed by N.L.R.A., § 8(b), 29 U.S.C. § 158(b), to fairly represent the interest of each employee in dealings with the employer. *Id.* A union's duty of fair representation "includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). *See* Clark, *The Duty of Fair Representation: A Theoretical Structure*, 51 Tex.L.Rev. 1119 (1973). *Vaca* has been interpreted to establish three distinct standards of conduct: a union may not act arbitrarily, discriminatorily *or* in bad faith toward one of its members. *Sanderson v. Ford Motor Co., supra*, 483 F.2d at 110.

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, authorizes an employee to bring an action against his employer for breach of the collective bargaining agreement negotiated between the employer and the union. It is a defense to such action that the employee has failed to exhaust his contractual remedies, which usually call for arbitration. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Vaca v. Sipes, supra; Harris v. Chemical Leaman Tank Lines*, 437 F.2d 167 (5th Cir. 1971); *Lomax v. Armstrong Cork Co.*, 433 F.2d 1277, 1280 (5th Cir. 1970). Where the Union has wrongfully refused to pursue available procedures and has thereby breached *its* duty of fair representation, the aggrieved employee need not exhaust the remedies set forth in the collective bargaining agreement. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes, supra; Ness v. Safeway Stores, Inc.*, 598 F.2d 558, 560 (9th Cir. 1979); *Lomax v. Armstrong Cork Co., supra*. Of course, in such an action it is necessary for the employee to prove a contractual violation before relief will be granted. Furthermore, a necessary element of a breach of duty of fair representation claim against the Union grounded on the Union's failure to fully pursue a member's grievance is proof that the employer violated the collective bargaining agreement. *Hines v. Anchor Motor Freight, supra*, 424 U.S. at 570–571, 96 S.Ct. at 1059.

The gravamen of Plaintiff's § 301 complaint against his former employer is that, under the circumstances of this case, he was terminated without just cause in violation of the collective bargaining agreement negotiated between the Defendants. Article 3 of said agreement provides:

"3.01. . . The Employer shall have the right to discharge any employee for just cause."

Article 24 enumerates certain prerogatives of management. Among these is the right "to maintain discipline and efficiency of the employees and to require employees to observe Employer rules and regulations; [and to] demote or discharge employees for just cause. . . . " The posted store rules in effect at the time of incident and subsequent discharge provided for immediate termination for "[a]ny employee engaged in fighting on company premises."

Safeway contends that, inasmuch as Plaintiff was by his own admission fighting on store premises, his discharge was mandated by company rules and policies. It is further argued that Safeway had the requisite "just cause" to dismiss Plaintiff under the collective bargaining agreement in effect between the parties. Both Defendants direct the Court's attention to a 1979 Arbitration decision which found "just cause" for Safeway's dismissal of two fighting employees. Safeway would have this Court conclude that, as a matter of law, it had "just cause" to dismiss Plaintiff on the basis of the August 24 incident.

*Lowe v. Pate Stevedoring Co.*, 558 F.2d 769 (5th Cir. 1977), seems not only in point, but controlling in this case. In *Lowe* a longshoreman brought suit against his employer and union after being discharged for attacking his supervisor without provocation and knocking him to the ground. The plaintiff argued, and the jury found, that his dismissal was without just cause, and therefore in violation of the collective bargaining agreement. The jury also found that the union's failure to investigate his discharge amounted to a breach of the duty of fair representation. The trial judge entered a judgment notwithstanding the verdict in favor of the employer and union defendants, on the ground that there was "just cause" for the plaintiff's dismissal as a matter of law. On appeal, the Fifth Circuit discussed a number of arbitration decisions which found wrongful dismissal notwithstanding employees' involvement in fights at the worksite because of mitigating circumstances. After reviewing the circumstances of the particular case, which included the employee's otherwise perfect employment record, the court concluded:

> "Certainly there is enough evidence to demonstrate that reasonable jurors could differ over whether this assault, in its context, created "just cause" for discharge. We hold that the issue is a classic jury question...." 558 F.2d at 773.

[4] It follows *a fortiori* from *Lowe* that a jury could reasonably find from all the circumstances that Plaintiff was terminated without just cause.[1] First, as in *Lowe*, there is no evidence of prior misconduct by Mr. Guzman. The Court must assume that Plaintiff had been fulfilling his responsibilities in a manner satisfactory to Defendant Safeway for a period exceeding six years. Second, Plaintiff claims not to have initiated the fisticuffs. He admits pushing his groceries across the scales in disgust, but steadfastly maintains that Mr. Martinez struck first with the intercom device. Indeed, Safeway did not here adopt a *per se* termination stance, but conducted an investigation of the incident before deciding to dismiss Mr. Guzman and Mr. Martinez, and to retain Mr. Gonzalez. The Plaintiff should have the chance to persuade a jury that Safeway was incorrect in its assessment, and that he was an unwilling participant in the fray.[2] Third, from all indications this was not a fight resulting in serious injury. Though all agree the incident was serious enough to warrant investigation by Safeway, the gravity of the occurrence is another factor for the jury's consideration. It is within the province of the jury to decide whether Defendant Safeway had just cause to terminate Plaintiff. See *Scott v. Anchor Motor Freight*, 496 F.2d 276, 281 (6th Cir. 1974), *cert. denied* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 ("Based on evidence of company practice, treatment of similar employees, and other relevant factors, the jury should be free to exercise its judgment in determining whether the Plaintiff employee's discharge was 'for just cause'").

1. To be sure, the evidence in *Lowe* suggested that "knifings, shootings and baseball bat beatings" were common occurrences on the Tampa wharves, 558 F.2d at 773; whereas, here the impression is that Safeway has never tolerated violence among its employees. In *Lowe*, however, the violence on the Tampa wharves was merely one of the "surrounding circumstances to enable a jury to believe reasonably that this particular assault was not so egregious as to require discharge." 558 F.2d at 772. The jury would, of course, be entitled to hear and consider Safeway's practices in reviewing Mr. Guzman's discharge. Moreover, the *Lowe* Plaintiff attacked his supervisor while on duty, presenting a more compelling case for discharge than one where an off-duty employee *qua* customer becomes involved in a fight with a store employee at a location removed from his own job-site.

2. Defendant Safeway has strenuously urged at oral argument and in its supporting memorandum that Plaintiff's final blow, resulting in Mr. Martinez' knockdown, was unprovoked, and, as such, constituted just cause for Plaintiff's dismissal as a matter of law. Though Plaintiff's conduct may not be excused, it is clear his anger was aroused by the earlier attack on his person. In such circumstances dismissal may not be warranted. *See e.g., General Tele. Co. of Cal.*, 44 L.A. 499 (ill will generated between former strikers and nonstrikers could not be expected to cool overnight; emotional lapse of control was mitigating factor in discipline of worker who struck fellow worker in mouth with fist).

■ Though Plaintiff has managed a narrow escape on the issue of just cause, it remains for him to demonstrate a material issue in respect to the handling of his grievance by Defendant Local # 663. The standard employed will be crucial to any action for unfair representation. As *Vaca* makes clear, a finding that the union failed to pursue to arbitration a grievance which is later discovered to be meritorious does not in itself support a finding that the union breached its duty of fair representation. *Vaca v. Sipes, supra,* 386 U.S. at 192–193, 87 S.Ct. at 917–918. Unless a union is invested with ample discretion to settle employee grievances, it will have a strong incentive to invoke expensive and time-consuming arbitration procedures, regardless of its view of the merits, in the face of potential liability should it be incorrect in its assessment. *Id.;* Clark, *The Duty of Fair Representation: A Theoretical Structure, supra,* at 1161. Rather, "[t]he key question . . . is whether the union in this case acted in an arbitrary or discriminatory manner or in bad faith when it decided not to proceed with arbitration of the plaintiff's grievance." *Freeman v. O'Neal Steel, Inc.,* 609 F.2d 1123, 1125 (5th Cir. 1980), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39.

As previously noted, Local # 663 and Plaintiff present vastly discordant versions of the processing of his grievance. Since this case is here on a motion for summary judgment, the Court will assume the truth of the allegations set forth in Plaintiff's opposing affidavit. Those arguably giving rise to a genuine issue of material fact are: (1) that Plaintiff was never apprised of the Union's ultimate disposition of his grievance; (2) that Mr. Estrada, the Union business agent, in the conduct of his investigation failed to contact Plaintiff; and (3) that Plaintiff's grievance was not considered by the Union's Executive Board for further processing.

■ Plaintiff's first argument can be readily dismissed. A union does not breach its duty of fair representation when it fails to notify the employee of proceedings in which his grievance is considered for fur-ther processing. *Freeman v. O'Neal Steel, Inc., supra,* 609 F.2d at 1126–1127 (failure of union to notify grievant of meeting at which decision was made not to proceed with his arbitration was not determinative on the issue of good faith; it is not essential that the grievant be present when the union decides whether to pursue his grievance); *Whitten v. Anchor Motor Freight, Inc.,* 521 F.2d 1335, 1341 (6th Cir. 1975), *cert. denied,* 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976) (failure of union to keep employee informed of status of his grievance insufficient to support a claim of unfair representation); *Bazarte v. United Transportation Union,* 429 F.2d 868, 872 (3rd Cir. 1970) (unfair representation not established by union's failure to inform employee of its decision not to go forward with his case); *Contra: Robesky v. Quantas Empire Airways Ltd.,* 573 F.2d 1082, 1091 (9th Cir. 1978) (trier of fact could reasonably find that the union's failure to disclose to employee that her grievance would not be submitted to arbitration was without rational basis or was reckless and extremely prejudicial).

■ Similarly, Mr. Estrada's failure to contact Plaintiff in the course of his investigation was not arbitrary conduct under the circumstances of this case. This is not a case where the Union investigation was limited to Mr. Estrada's efforts. Rather, the results of his investigation at Store No. 23 were reported to Union President Blair. Plaintiff in his deposition admits discussing the incident at length with Mr. Blair on at least two independent occasions. It is undisputed that the Union included Plaintiff's version in its investigation; the law required no more. *See Turner v. Air Transport Dispatcher's Assn.,* 468 F.2d 297, 300 (5th Cir. 1972).

■ A more difficult question is presented by the presumed failure of the Union's Executive Board to consider Plaintiff's grievance for arbitration. Though Plaintiff has made no suggestion of bad faith on the part of Defendant Local # 663 officials, such a showing is not necessary to his action. Local # 663 may have breached

its duty of fair representation by processing Plaintiff's grievance in a perfunctory manner. *Grovner v. Georgia-Pacific Corp.*, 625 F.2d 1289, 1290–1291 (5th Cir. 1980); *Ness v. Safeway Stores, Inc.*, 598 F.2d 558, 560 (9th Cir. 1979); *Milstead v. International Bhd. of Teamsters*, 580 F.2d 232, 235 (6th Cir. 1978); *Lowe v. Pate Stevedoring Co., supra*, 558 F.2d at 771, n. 2. The question thus posed is whether a reasonable jury could conclude that a union whose president has conducted a satisfactory investigation of an employee's grievance and on the basis of same would be justified in recommending against further action has perfunctorily processed the grievance by failing to have the matter considered by its full executive board. The Court concludes that a jury could so find.[3]

▮▮▮ The employees' representative is accorded discretion in handling grievances so that it may utilize its resources in a manner thought to best serve the interests of its membership. *See, e.g., Encina v. Tona Lama Boot Co.*, 316 F.Supp. 239 (W.D. Tex.1970), *aff'd* 448 F.2d 1264 (5th Cir. 1971). Implicit in this grant of discretion is the assumption that the union will make a reasoned, albeit not infallible, determination regarding the merits of the complaint. For the union's duty of responsible consideration[4] to be given content, it must include the "obligation to investigate and to ascertain the merit of employee grievances." *Turner v. Air Transport Dispatcher's Ass'n, supra*, 468 F.2d at 299. In *Turner* the union met this standard, but only after it had listened to and discussed the employees' arguments at an open meeting. An employee's representative which fails either to investigate or evaluate a particular grievance has not fulfilled its duty of fair representation. The union in *Milstead v. International Brotherhood of Teamsters, supra*, for example, was unaware of a seniority provision having a direct bearing on the employee's case. Though the union,

after balancing the interests of its members, may have decided against arguing for the particular construction before a joint labor-management committee, its failure to make such a determination out of ignorance revealed perfunctory processing of the employee's grievance. "In this case, no analysis of competing collective and individual interests could have occurred because the union was seemingly unaware of [the Plaintiff's] interest in the missing seniority provision." 580 F.2d at 236.

Careful deliberation at the conclusion of a full investigation is no less essential to reasoned decisionmaking. *Cox v. C. H. Masland & Sons, Inc.*, 607 F.2d 138 (5th Cir. 1979) illustrates the conduct which may be required. After investigating the circumstances of the employee's discharge, processing the grievance through three steps of the contractual procedure, and offering a compromise settlement which was rejected by the employer, the union "decided not to take the case to arbitration only after a special conference to consider all the facts and the arguments for and against arbitration." 607 F.2d at 145. Because the union decided against taking the grievance to arbitration only after full deliberation, it was not derelict in its duty. *Id.*

In the instant case any Union decision would undoubtedly be influenced by its earlier unsuccessful arbitration with its current co-defendant under similar factual circumstances. That distinctions can be drawn between the two cases is not material, for the Union may responsibly err in its judgment. The failure of the Defendant's Executive Board to evaluate Plaintiff's grievance does, however, raise a genuine issue of material fact with respect to its handling of same. A jury, after reviewing Defendant's handling of other grievances, inspecting Local # 633's by-laws and other internal practices, and weighing the credibility of the witnesses, could draw the inference that the Board's failure to consider

---

3. The Court recognizes that summary judgment is inappropriate even though the opposing party is unlikely to prevail at trial. *Aulds v. Foster*, 484 F.2d 945, 946 (5th Cir. 1973).

4. One commentator has characterized this obligation as one of rational decision making. Clark, *The Duty of Fair Representation: A Theoretical Structure, supra* at 1132.

Plaintiff's claim amounted to perfunctory processing in abdication of Defendant's duty of fair representation. "Where, as here, a factual issue surrounding the discharge is raised, the perfunctory handling of a grievance takes on increased importance." *Lowe v. Pate Stevedoring, supra*, 558 F.2d at 771, n.2. Plaintiff may have been deprived of a meaningful evaluation of his grievance by Defendant's Board, however unlikely this may appear from the affidavits on file. Though Defendants have Plaintiff on the ropes, he still has a fighting chance.

It is therefore ORDERED that Defendants' motions for summary judgment be, and they are hereby, DENIED.