[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12445

Non-Argument Calendar

_____

KENNETH A. HOROWITZ,
as Assignee of Underwater Exploration Company Inc,

Plaintiff-Appellee,

*versus*

ALLIED MARINE, INC.,
a.k.a. Ferretti Group USA, Inc.,
a.k.a. Ferretti Group USA,

Defendant-Appellant,

FERRETTI GROUP OF AMERICA, LLC., et al.,

2                    Opinion of the Court                    24-12445

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cv-60358-RKA

_____

Before JILL PRYOR, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Following a five-day trial, a jury awarded damages of $546,055.28 against Allied Marine, Inc. under the Magnuson-Moss Warranty Act.  Allied Marine responded by filing motions for remittitur or new trial, which the district court denied.  Seeing no error, we affirm.

**I.**

Kenneth Horowitz wanted a boat.  So he purchased a 38' RIVA yacht from Ferretti Group of America, LLC for $1,254,000. The vessel was delivered to his home on March 18, 2020.  Allied Marine issued and handled the warranty.

"Beginning on the day" Horowitz received the yacht, Allied Marine acknowledges that the vessel "exhibited several problems." Horowitz testified that when the yacht arrived, "both engine hatches were open," he "heard an alarm going," and "there were gauges that were not working."  A captain hired by Horowitz to

pilot a cruise raised "fire" concerns, calling the boat "possessed." He admonished Horowitz "to get rid of" it. And a marine diesel mechanic "noticed that the alternators on both engines were not charging." When he contacted the engine company, it replied that the yacht's wiring "wasn't done correctly at the factory." Finally, an "expert in the field of electrical engineering and corrosion" said that the boat was "not safe to be operated by [a] recreational boater." This led Horowitz to conclude that the boat "wasn't safe" and "wasn't reliable," so he "couldn't use it for what [he] wanted to."

Horowitz gave up and sued Allied Marine in federal district court. The case went to trial. The jury found for Horowitz on count VI, a breach of the implied warranty of merchantability under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. It awarded damages of $548,755.28 against Allied Marine but reduced the award to $546,055.28 for failure to mitigate.

Allied Marine filed a motion—and then an amended motion—for remittitur or new trial because "the evidence does not support an award greater than $41,155 as a matter of law." The district court denied the motion. This appeal followed.

## II.

"We review the denial of a motion for remittitur or new trial under an abuse of discretion standard." *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013).

### III.

Federal Rule of Civil Procedure 59(a) allows for a new trial to be granted when a verdict lies against the weight of the evidence or the damages award is excessive. *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). A motion for a new trial should be granted "only if the verdict is against the great, not just the greater, weight of the evidence." *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988). Though federal law governs this decision, "an issue of the sufficiency of damages awarded for a state claim is decided under state law." *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 960 (11th Cir. 2014). And the Magnuson-Moss Warranty Act incorporates Florida law for damages purposes. *See Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298 (11th Cir. 1999).

Under Florida law, courts consider several factors to determine "whether an award is excessive or inadequate." Fla. Stat. § 768.74(5). These include whether the award (a) "is indicative of prejudice, passion, or corruption"; (b) indicates the "trier of fact ignored the evidence"; (c) suggests the trier of fact "arrived at the amount of damages by speculation and conjecture"; (d) "bears a reasonable relation to the amount of damages proved and the injury suffered"; and (e) "is supported by the evidence" or "could be adduced in a logical manner by reasonable persons." *Id.* § 768.74(6). The Florida Supreme Court has cautioned courts to leave damage awards intact unless the award "is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate." *Bould v. Touchette*, 349 So. 2d 1181, 1184–85 (Fla. 1977).

24-12445                Opinion of the Court                5

The parties agree—and the district court instructed the jury—that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted."  Fla. Stat. § 672.714(2).  That is where the agreement ends, however.

On appeal, Allied Marine contends that the evidence did not support the jury's damages award.  It concedes that the warranted value of the yacht was $1,254,000—"the amount that Horowitz paid for it."  But, to Allied Marine, the evidence supports (at most) a diminished-value damages award of $40,000—the "projected cost of repairs" for the yacht's many troubles.  Though Allied Marine would permit a $1,155 increase in damages for a paid invoice, the award must be slashed by $2,700—the jury's "reduction for unmitigated damages."  This leads to a total "maximum damages" award of $38,455.  And unless Horowitz agrees to remit his damages, Allied Marine asserts, its motion for a new trial must be granted.

We are unpersuaded.  Mindful that jury verdicts "should be disturbed or modified with caution and discretion," the district court did not abuse its discretion.  *Id.* § 768.74(6).  That is for several reasons.

*First* and most important, the evidence supported the jury verdict.  The parties stipulated that Horowitz purchased the yacht for $1,254,000.  They likewise agreed that this price was evidence of the yacht's value as warranted.  At trial, Horowitz testified that

"the value of the Riva" to him upon delivery was "[z]ero." But twisting Horowitz's testimony, Allied Marine contends that "at the time and place of acceptance," Horowitz admitted that "the yacht he accepted was worth what he paid for it or more." This, in turn, meant that the yacht "suffered no diminution of value."

That is incorrect. Horowitz expressly clarified that while he "paid" over a million dollars for the yacht, it was worth "[z]ero" to him "after it was delivered" in March 2020. And while Horowitz's marine survey calculated the value of the yacht at "approximately $1,600,000,"—i.e., more than the purchase price—that valuation was derived several weeks *before* delivery of the vessel. That figure thus reveals little about the yacht's value "at the time and place of acceptance." *Id.* § 672.714(2).

What's more, the jury heard ample evidence that the yacht arrived defective at Horowitz's dock, lessening its value. Climbing onto the boat, Horowitz noticed "that there were gauges that were not working" and "heard an alarm going." Asked whether the myriad defects existed "at the time the boat was delivered," Horowitz responded, "to the best of my acknowledge, absolutely." He testified that "all the major organs of the boat, the working, the brains, the heart, the muscle of the boat" needed fixing. These "major repair[s]" required a "vessel refit" of "the helm station, the engine compartment," and "main panel" of the boat. Finally, other witnesses, including an electrical engineering and corrosion expert, "validated [Horowitz's] complaints" and labeled the boat "unsafe."

24-12445                Opinion of the Court                7

After "weigh[ing] conflicting evidence and inferences, and determin[ing] the credibility of the witnesses," the jury was free to side with Horowitz and reject Allied Marine's damages calculation. *Lowe v. Pate Stevedoring Co.*, 558 F.2d 769, 772 (5th Cir. 1977).[1] That Allied Marine's own witness—and director—claimed that the cost of repairs "would be a few thousands [sic] of dollars, like $40,000," is beside the point. The jury was within its rights to disagree. *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986).

*Second*, Allied Marine argues that a "leading Florida case" establishes that Horowitz's "subjective conclusions" about the value of the yacht are "legally insufficient to establish the required element of the accepted yacht's objective, actual value." *See Kia Motors Am., Inc. v. Doughty*, 242 So. 3d 1172 (Fla. Dist. Ct. App. 2018). Allied Marine is mistaken.

Start with the facts of that case. The owner in *Kia Motors* sued after his vehicle began to exhibit defects over a year after he purchased it. *See id.* at 1174. That meant "there was no evidence that would have enabled the jury to determine the actual value of that defective car *at the time and place of sale*." *Id.* at 1176 (emphasis added). Here, by contrast, the yacht was "deficient when delivered," as Allied Marine concedes, allowing the jury to determine—based on the evidence at trial—the vessel's actual value for damages purposes.

---

[1] *Lowe* is binding precedent in the Eleventh Circuit under *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Undeterred, Allied Marine suggests that *Kia Motors* requires "expert testimony on the amount of damages," rather than a plaintiff's "subjective conclusions." Not so. The court explained, "we do not today hold that expert testimony—or any particular type of evidence, for that matter—is necessary to establish the value of a warranted good at the time and place of acceptance." *Id.* at 1177. After all, "an owner of property is competent to testify regarding its value." *Neff v. Kehoe*, 708 F.2d 639, 644 (11th Cir. 1983) (quotation omitted). Instead, the *Kia Motors* court held only that under the facts of that case, the plaintiffs had "failed to produce any evidence to prove that value." 242 So. 3d at 1177. But to say that Horowitz failed to produce "any evidence" of defects is to ignore the record. The jury was entitled to believe Horowitz and conclude that the yacht's diminished value exceeded the cost of Allied Marine's recommended repairs.

In sum, "there is nothing in this record to support a holding that the damages returned were [more] than could have been returned by a jury acting upon the evidence before it." *Allied Chem. Corp. v. Eubanks Indus., Inc.*, 155 So. 2d 740, 742 (Fla. Dist. Ct. App. 1963). Put differently, the amount that the jury awarded on count VI was not "indicative of prejudice, passion, or corruption"; did not "ignore[] the evidence"; did not involve "speculation or conjecture"; bore "a reasonable relation to the amount of damages proved and the injury suffered"; and "could be adduced in a logical manner by reasonable persons." Fla. Stat. § 768.74(5).

\*    \*    \*

Because the district court did not abuse its discretion in denying Allied Marine's amended motion for remittitur or a new trial, we **AFFIRM** its judgment.