**Joe KIPPEN, Appellant,**

v.

**Wanda May JEWKES, an infant, William Jewkes, her next friend, and William Jewkes, in his own right, as heir of Alice Jewkes and as next friend of plaintiff Wanda May Jewkes, for herself and as heir of Alice Jewkes, Appellees.**

**No. 5829.**

United States Court of Appeals Tenth Circuit.

Aug. 8, 1958.

Don J. Hanson, Salt Lake City, Utah (Edwin B. Cannon, Salt Lake City, Utah, was with him on the brief), for appellant.

J. Richard Bell, Salt Lake City, Utah, for appellee, Wanda May Jewkes.

Before PHILLIPS, PICKETT, and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

On December 7, 1954, a collision occurred on U. S. Highway 40–50 in Utah, between an automobile being driven by William Jewkes and a truck owned and operated by Wendel P. Mortenson. At the time of the collision the truck was stalled on the highway. As a result of the collision Alice Jewkes, wife of William and mother of Wanda Jewkes, died and William and Wanda suffered personal injuries.

Wanda, by William as her next friend, and William brought this action against Mortenson and Kippen to recover damages as surviving heirs of Alice Jewkes and damages for the personal injuries suffered by each of them, respectively.

By its verdict, which was divided into several parts, the jury found in favor of Wanda and against Mortenson and fixed her damages at $6,500, found against William and found in favor of Kippen.

At the close of the evidence the plaintiffs interposed a motion for a directed verdict against both Kippen and Mortenson. The trial court reserved its ruling on the motion for a directed verdict. Thereafter, and after the jury had been discharged, the plaintiffs interposed a motion for a new trial and in the alternative for judgment notwithstanding the verdict. Thereafter, the court made the following ruling:

"I am denying the motion for a judgment non obstante veredicto. I am denying the motion for a new trial. I am now granting the motion for a directed verdict which he made at the close of all the evidence on the issue of whether or not Kippen was an employer, and I am holding, as a matter of law, that Kippen was an employer and that Kippen is responsible as much as the truck driver for his negligence, which the jury has found. The jury has found the truck driver was negligent, and the jury has given the judgment for $6500 against the truck driver; and, by granting your motion for a directed verdict on the question of whether Kippen was an employer, I am, in effect, giving you a judgment against him, too."

Judgment was then entered against Kippen for $6,500 and he has appealed.

The evidence established the following facts, with respect to which there was no substantial dispute.

Kippen operates a ranch and sheep raising business near Morgan, Utah. In the course of his operations he and his employees have occasion to travel from his ranch near Morgan to his winter range, located near Wendover, Utah, and to return to his Morgan ranch.

Mortenson lives near Morgan, Utah, and during certain seasons of the year engages in hauling of sheep for sheepmen in the area, utilizing for that purpose a motor vehicle truck, which he owns. For hauling the sheep he charges a flat fee or lump sum, fixed by taking into consideration such variables as mileage, loading and road conditions. Mortenson maintains and keeps his truck in repair and furnishes at his own expense the gas and oil consumed in hauling. He testified at the trial that he hauls sheep for "a lot of people," including Kippen, but at times when there is no demand for sheep hauling the works at odd jobs for wages.

About a week before the accident, Kippen entered into an arrangement with Mortenson for the latter to haul a load of sheep from Kippen's Morgan ranch to his winter pasture near Wendover. About two days later Kippen entered into an arrangement with Mortenson to haul a second load of sheep from his ranch near Morgan to such winter pasture. Kippen agreed to pay Mortenson $50 for hauling the first load and $55 for hauling the second load. Under the arrangement, Mortenson was to transport the sheep on a truck which he owned and operated and in which Kippen had no interest. While there was perhaps only one feasible direct route between the Morgan ranch and the winter range, Mortenson testified that he selected the route for both trips. Mortenson paid for the gas and oil and all other expenses incurred in the transportation. Kippen paid Mortenson $105 for the two trips and made no withholding on account of tax deductions or Social Security deductions.

Mortenson hauled the first load of sheep about December 1 and the second load of sheep about December 7. Kippen rode with Mortenson on the first trip and Kippen's son rode with Mortenson on the second trip from Morgan to the winter range. Kippen testified that neither he nor his son accompanied Mortenson on the haulage trips to see that the sheep were "taken care of and in good shape" and that "when you hire a man you do not overload" and "you depend" on the driver. It was customary for either Kippen or his son to remain at the winter range. However, after the delivery of the second load, due to favorable weather conditions, they decided to return to Morgan, utilizing their own truck for that purpose. Mortenson also decided to return with his truck to Morgan. The return journeys by Kippen and his son and by Mortenson commenced at approximately the same time. When they had traveled part way the Kippen truck broke down and Kippen and his son continued their journey as passengers in Mortenson's truck. While all three were traveling in the Mortenson truck it stalled on the highway. While the truck was so stalled William drove his car into the rear portion of the Mortenson truck, resulting in the collision referred to above.

There was no evidence that Kippen retained or exercised any control over the details of the transportation nor over the operation of the truck on the return trip to Morgan. Of course, when the last load was delivered the contracts of haulage were fully performed and completed and Mortenson was free to go his way when and where he pleased. While returning to Morgan on the second trip Mortenson had complete control over the operation of the truck, the route, the time he would travel and all other details of operation. During that portion of the return trip when Kippen and his son rode with Mortenson, the relationship between Mortenson and Kippen and his son was that of carrier and gratuitous passenger and Kippen had no control over Mortenson's operation of the truck.

At the trial the court instructed the jury in detail on the question of imputed liability as it concerned the relationship between Kippen and Mortenson. In its instructions the court clearly spelled out for the jury Kippen's defense of non-liability on the theory of contractee-independent contractor relation and drew the distinction for the jury between liability imputed on the basis of an employer-employee relationship and non-liability in the non-imputable contractee-independent contractor relationship.

The jury by its verdict showed clearly that it did not regard the relationship between Kippen and Mortenson to be that of employer and employee.

While the procedure followed by the trial court in its final ruling was somewhat irregular and unorthodox, we think the ultimate question presented was whether the evidence established as a matter of law that the relationship was that of master and servant

and hence there was no issue of fact for determination by the jury.

In determining whether the relationship between parties is that of contractee and independent contractor, or that of master and servant, the factors usually considered by the courts are the nature and extent of the work, the skill required, the term and duration of the relationship, the power to terminate the relationship, the existence of a contract for the performance of a specified piece of work and the control and supervision of the work.[1]

The factor usually regarded by the courts as of greatest significance is the presence or absence of the right of control and supervision. If one hired to do work or render a service is subject to the control or direction of the employer, only as to the result to be obtained, and is free to follow his own judgment and discretion as to the mode, manner and details of the performance of the work or rendition of the service, he is an independent contractor and not a servant.[2]

Here, since the contract was made and was to be performed in Utah, the decisions of the Supreme Court of Utah are controlling. Utah has adopted the control and supervision test.

In Dowsett v. Dowsett, 116 Utah 12, 207 P.2d 809, 811, that court quoted with approval § 220, Restatement of the Law on Agency, Comment c as follows:

"* * * An agent who is not subject to control as to the manner in which he performs the acts that constitute the execution of his agency is in similar relation to the principal as to such conduct as one who agrees only to accomplish mere physical results. For the purpose of determining liability, they are both 'independent contractors' and do not cause the person for whom the enterprise is undertaken to be responsible."

See, also, Christean v. Industrial Commission, 113 Utah 451, 196 P.2d 502, 503, 511 and Chatelain v. Thackeray, 98 Utah 525, 100 P.2d 191, 199. In the Chatelain case and in the Christean case the court said: "The rule of broadest and most universal application is the right of control as to the manner of doing the work to be performed under the contract."

A trial court, in determining whether it will grant either a motion for a directed verdict or a motion for judgment notwithstanding the verdict, must consider the evidence and the inferences that may fairly be drawn therefrom in the light most favorable to the party against whom the motion is directed, and if the evidence and the inferences, viewed in that manner, are of such character that reasonable men in the exercise of fair and impartial judgment may reach different conclusions with respect to the issue or issues presented, the motion should be denied.[3]

Here, we are of the opinion that considering the evidence in the light most favorable to Kippen, the jury was warranted in finding that there was such an absence of the right of control and supervision of the manner and method of performing the haulage contract and other pertinent factors of a master and servant relationship, that the relationship between Kippen and Mortenson up to the time of completion of the delivery of the second load of sheep was that of an independent contractor and contractee.

Moreover, when Mortenson had completed the delivery of the second load

---

1. 56 C.J.S. Master and Servant § 3(2), p. 46.

2. 56 C.J.S. Master and Servant § 3(3), pp. 49–55, inclusive.

3. Long v. Clinton Aviation Co., 10 Cir., 180 F.2d 665; Chicago, Rock Island & P. R. Co. v. Consumers Coop. Ass'n, 10 Cir., 180 F.2d 900, 904; Burcham v. J. P. Stevens & Co., 4 Cir., 209 F.2d 35. See, also, Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147, and MacKay v. Costigan, 7 Cir., 179 F.2d 125, 127.

of sheep, he had fully performed his contract with Kippen and from that point on there was a total absence of any right of control or supervision by Kippen over the operation of the truck and there were present no elements of the relationship of master and servant between Kippen and Mortenson. The only relationship after the delivery, which the jury would have been warranted in finding, was that of gratuitous passenger and carrier.

The judgment is reversed and the cause remanded, with instructions to reinstate the verdict and render judgment for Kippen.