**Leo McCRACKEN and Park Anderson, Appellants,**

v.

**Riley Mitchell JONES, Appellee.**

**Riley Mitchell JONES, Cross-Appellant,**

v.

**Leo McCRACKEN and Park Anderson, Cross-Appellees.**

**Nos. 76–1360, 76–1361.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 17, 1977.

Decided Aug. 29, 1977.

Rehearing Denied Oct. 18, 1977.

Paul Crowe, Asst. Atty. Gen., Oklahoma City, Okl. (Larry Derryberry, Atty. Gen., and Ross N. Lillard III, Asst. Atty. Gen., Oklahoma City, Okl., with him on the brief), for appellants, cross-appellees.

Fred P. Gilbert, Tulsa, Okl., for appellee, cross-appellant.

Before SETH, PICKETT and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This is a civil rights action filed by a prisoner in an Oklahoma state prison against the two defendants, one of whom was the warden; the other was then the Director of the Department of Corrections. Neither defendant now occupies the position he did when the suit was brought. The case was tried to a jury which returned a verdict of $4,000.00 against each of the defendants. The defendants had filed a motion which was treated as for a directed verdict. They also filed motions for judgment n.o.v. These were denied, and defendants have appealed.

The plaintiff in his complaint asserts that he injured his back on September 20, 1971, while he was in maximum security as he stooped over to pick up something. The complaint also states that he requested medical care, but that he was denied medical care on November 23d. In any event, he was taken to the prison infirmary for examination by the prison doctor soon after

he made his complaint. The doctor put him in traction, and kept him in the infirmary for about two weeks.

On December 13, 1971, the then warden, defendant Anderson, directed that plaintiff be sent to the Central State Hospital for examination. He was there examined by two doctors employed by the University of Oklahoma Hospital, one being a resident orthopedic surgeon, the other a surgeon. These two doctors made their diagnosis, and found that there was then no need for surgery. The warden was so advised of their opinion by a letter dated January 5, 1972.

The plaintiff apparently did not agree with the diagnosis by the University doctors nor the treatment prescribed. The doctors had prescribed certain exercises for plaintiff's back, but he did not do the exercises. The plaintiff requested that he be permitted to go to a doctor in private practice, apparently in Muskogee.

■ As the matter then stood there was no more than a difference of opinion as to the diagnosis and treatment between the prisoner and the medical report the warden received. It is obvious that this cannot serve as a basis for a cause of action. We have so held on many occasions, beginning with *Coppinger v. Townsend,* 398 F.2d 392 (10th Cir.). *See also Smart v. Villar,* 547 F.2d 112 (10th Cir.).

The warden shortly thereafter refused to allow the plaintiff to leave the prison and go to Muskogee for an examination by plaintiff's doctor. This was well within the discretion of the warden in the operation of the prison. Again he had the diagnosis of the University doctors, and he was entitled to rely on it for this purpose also and for the same reasons. Thus the plaintiff still disagreed with the authorities as to his medical condition and treatment. The matter thus presented no basis for a cause of action. This is still a difference of opinion situation under *Coppinger v. Townsend,* 398 F.2d 392 (10th Cir.), referred to above.

The letter to the warden from the University doctors, referred to above, was dated January 5, 1972, and on January 17, 1972, the plaintiff filed suit against the defendants. In the action he asked for a court order that he be permitted to consult his own doctor. Although the record is not entirely clear as to the details, plaintiff apparently also asked that he receive no further treatment at the prison. The court, on plaintiff's motion in the then pending suit, directed that an examination be performed by plaintiff's doctor at the prison. This was done and the private doctor recommended a myelogram. This examination to be at the Muskogee Hospital was ordered by the court, and was performed on March 26th. On April 2d, the plaintiff's back was operated on by his own doctor. The operation was done at the Muskogee Hospital without any reference to the prison authorities.

■ This operation changed the situation in that it demonstrated a difference of opinion now between the University doctors who had examined the plaintiff and the doctor who operated on plaintiff. The fact that the plaintiff was operated on does not of itself indicate which treatment, exercise or an operation, was correct. It did, of course, establish the difference in professional opinion as to treatment. The doctor who operated testified that the operation was necessary. The defendants were not able to subpoena the University doctor who examined plaintiff nor were they permitted by the court to take his deposition, so that aspect was not developed. Much of the trial was taken up with testimony relating to the correct diagnosis and treatment; however, defendants did not have to bear the risk arising from the variations in the views of the doctors. Again, defendants were entitled to rely on the diagnosis they received from the state medical authorities who examined plaintiff. If anything approaching malpractice had been indicated, the defendants did not have to defend such a charge. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251, and *Isenberg v. Prasse,* 433 F.2d 449 (3d Cir.). Defendants do not guarantee that the prisoners receive absolutely correct medical treatment, as there is no such thing, and every-

one takes a risk as to diagnosis and treatment, as did the plaintiff. The plaintiff appears to be asserting basically a malpractice claim, and much of the proof and appellee's brief would so indicate. This he cannot do against these defendants.

As mentioned above, the plaintiff filed suit on January 17th seeking private medical treatment. There was a lapse of time after that until he was operated on by the outside doctor. This delay was caused by the plaintiff in obtaining the court orders he sought. The litigation, for all practical purposes, prevented further prison treatment, and generally suspended further prison directed examinations. The record shows that the delay was chargeable to the plaintiff, and it was not only delay, but was affirmative in that the defendants were prevented from providing further examination or treatment.

■ Thus it is apparent that once suit was filed on January 17th, the plaintiff undertook to direct his own care and treatment through the court as he had a perfectly clear right to do. He made the choice to go that route as being in his best interest. By making the choice he did, the matter passed entirely out of the hands of the defendants or any other prison authorities. The treatment thus became what the plaintiff and his private doctor wanted, with the trial court's concurrence. The treatment was a departure from that recommended by the University doctors. In any event, the plaintiff through litigation assumed control of the treatment of his ailment. This assumption effectively excluded the defendants, and thereby terminated any further duty on their part.

The standards or tests for review of motions for directed verdicts and n.o.v. were described by this court in *Moore v. Shultz*, 491 F.2d 294 (10th Cir.), and references were made therein to previous cases. We there said:

" * * * The standards for review of judgments n.o.v. were set out by this court in *Kippen v. Jewkes*, 258 F.2d 869 (10th Cir.), and more recently in *United States v. Fenix & Scisson, Inc.*, 360 F.2d 260 (10th Cir.); *Wilkin v. Sunbeam Corp.*, 377 F.2d 344 (10th Cir.). This standard which we have said is to be applied to both judgments n.o.v. and to directed verdicts is that the evidence must be viewed in the light most favorable to the party opposing the motion (together with inferences which may be fairly drawn therefrom), and the verdict not directed nor the motion granted unless the evidence points all one way, and is susceptible of no reasonable inferences which sustain the position of the party against whom the motion is directed. The motion must also be denied if the evidence and the inferences, so examined, are such that reasonable men may reach different conclusions. *Kippen v. Jewkes*, 258 F.2d 869 (10th Cir.)."

When the basic issue of duty of the defendants and breach of duty are separated from the malpractice elements of the trial, and when the review standards are applied we must hold that judgment n.o.v. should have been granted the defendants on their motion. It is clearly a matter of law to reduce the suit to its proper scope and proportions; the refusal of medical treatment as cruel and unusual punishment was the cause of action.

When the proper issue is isolated, and when the evidence as to duty and the evidence as to the discharge of duty is then viewed in the light most favorable to the plaintiff, with all reasonable inferences so considered, we must conclude that reasonable men would not reach a conclusion different from that advanced in the motion for judgment n.o.v. The defendants were tried in large measure for malpractice, and this is the only issue on which the jury could have reached the verdict it did. Thus as a matter of law, there was no evidence upon which the jury could have reached a verdict on the only issue properly before it.

We find it clear from the record that no duty of the defendants to the plaintiff arose after the suit was filed. Before that date there is no evidence that the duty of the defendants to the plaintiff by way of medical care had not been fully discharged.

Thus, as above stated, the motion for judgment n.o.v. should have been granted by the trial court. The trial court expressed serious doubt as to the verdict, in considering the motions of the defendants as to the matters herein considered.

The judgment appealed from is set aside, and the case is remanded for further proceedings in accordance with this opinion.