**Anna REDDING, as guardian for the person and estate of Mark Allen Redding, Plaintiff,**

**v.**

**John H. MARSH, et al., Defendants.**

**No. 88–767–C.**

United States District Court, E.D. Oklahoma.

March 13, 1990.

474

Mark Hammons, Oklahoma City, Okl., for plaintiff.

Bob Nance, Asst. Atty. Gen., Oklahoma City, Okl., for Marsh.

Joe Stamper, Antlers, Okl., Scott Johnson, Oklahoma City, Okl., for McAlester Regional.

Russell Hendrickson, Oklahoma City, Okl., for Staggs.

## ORDER

SEAY, Chief Judge.

This is an action brought under the authority of 42 U.S.C. § 1983[1] by plaintiff, Anna Redding, on behalf of Mark Allen Redding (Redding), a former inmate incarcerated at the Jackie Brannon Correctional Center (JBCC), McAlester, Oklahoma. Defendants are John H. Marsh (Marsh), a physician employed by the Oklahoma Department of Corrections to serve the JBCC; McAlester Regional Health Center d/b/a McAlester Regional Hospital (MRH); and Dennis R. Staggs (Staggs), the physician who diagnosed and treated Redding at MRH. Plaintiff maintains that defendants, while acting under color of state law, subjected Redding to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution by not providing him appropriate and timely treatment.[2] It is plaintiff's contention that the motivation for the alleged lack of proper and timely treatment was Redding's status as an inmate.

Before the court are various motions to dismiss and/or motions for summary judgment filed by the parties. Having reviewed the voluminous briefs and attachments in support of the respective motions, the court finds that there are no genuine issues as to any material facts concerning plaintiff's Eighth Amendment claim and that defendants are entitled to judgment as a matter of law for the reasons stated below.

1. 42 U.S.C. § 1983 provides:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Plaintiff also makes pendent state claims of negligence against Marsh and Staggs.

## FACTUAL BACKGROUND[3]

On May 11, 1987, Redding was an inmate of the Oklahoma Department of Corrections incarcerated at the JBCC in McAlester, Oklahoma. At approximately 8:00 p.m. on the evening of May 11, 1987, Redding was struck in the head by a softball while he was participating in a softball game at the JBCC. After he was struck in the head by the softball, Redding fell to the ground and was unconscious for a period of four to five minutes. He had also suffered a cut to his lip during the fall and was bleeding both from his mouth and nose. The recreational program supervisor, Billy Taylor (Taylor), attended to Redding and told another officer to notify the facility's medical center to determine what should be done with Redding. After regaining consciousness, Redding was taken to the Oklahoma State Penitentiary (OSP) medical center at McAlester under his own power.

Once at the medical center, Redding was preliminarily examined by the nursing staff. At approximately 8:30 p.m., nurse Mary Sue Sisco (Sisco) called Harrell Franklin, the physician's assistant on call. Sisco informed Franklin of Redding's vital signs and general condition. At 9:05 Franklin arrived to treat Redding. Franklin noted a decreased sensorium in Redding. Franklin conducted a comprehensive visual and physical examination of Redding and cleaned, anesthetized, and sutured Redding's lip. At the conclusion of the suturing, Franklin noticed a slight slurring of Redding's speech. As a result of the slurred speech, Franklin again conducted a comprehensive examination of Redding.

3. In setting forth the factual background of this action, the court is mindful of the requirement that all factual inferences must be viewed in the light most favorable to plaintiff and against defendants in relation to defendants' motions for summary judgment. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33 (10th Cir.1975); *Conaway v. Smith,* 853 F.2d 789 (10th Cir.1988).

At 10:05 p.m. Franklin initially consulted by telephone with Marsh, who was at home, and informed Marsh of what had transpired involving Redding and of Redding's condition. After discussing Redding's condition with Marsh, Franklin asked to transport Redding to Central State Hospital (CSH). Marsh approved Franklin's request to send Redding to CSH and Franklin called CSH to make arrangements. While Franklin was making the arrangements in his office, someone came into his office and informed him that Redding had vomited blood. Franklin observed Redding after he had vomited and questioned him further. Franklin could not determine whether the vomiting was the result of blood Redding had swallowed from his cut lip or if it was due to some other internal injury. Shortly thereafter, at approximately 10:15 p.m., Marsh, having further reflected on the matter, called back and directed that Redding initially be taken to MRH for x-rays, as a precautionary measure and diagnostic tool. Marsh called Staggs, who was the attending emergency room physician at MRH, and informed him that Redding was coming and of the incident involving Redding and of Redding's condition.

At 10:27 p.m. a driver logged into the prison medical unit to take custody of Redding and at 10:31 p.m. Redding was transported to MRH's emergency room. Between 10:45 p.m. and 11:00 p.m. Redding arrived at MRH's emergency room. Redding's vital signs were obtained and Staggs documented Redding's history which included head trauma and a loss of consciousness. Staggs conducted a complete physical examination and x-rays were taken. Staggs noted an abnormally low heart rate, decreased sensorium, and slow response to verbal stimuli. Redding was further monitored and observed during the examination and throughout his stay in the emergency room. He was catheterized and medications and other solutions were administered. Lab work was obtained and various measures to lower intracranial pressure were undertaken. The x-rays revealed a skull fracture and Staggs recommended that Redding be taken by helicopter to Oklahoma Memorial Hospital (OMH) in Oklahoma City, Oklahoma. Staggs informed Marsh of his recommendation by telephone at approximately 11:30 p.m. Marsh agreed with the recommendation and Staggs made arrangements to transfer Redding to OMH.

Sometime before midnight, arrangements were completed to transfer Redding to (OMH). A Medi–Flight Helicopter Service in Oklahoma City was notified and agreed to send a helicopter to MRH to pick up Redding. The helicopter arrived shortly after 1:00 a.m. on May 12, 1987. Redding was given additional medications to lower his swelling and to treat seizures he was experiencing. He was stabilized and secured in the transport gurney with additional medical apparatus readied and available. Redding arrived at OMH for treatment and care, but unfortunately, his condition had deteriorated to the point where his injuries caused permanent quadraplegia and other associated permanent ailments.

### STANDARD

■ Having moved for summary judgment in their favor, defendants are required to show the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c). Their initial burden is to show the absence of evidence to support plaintiff's case. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Defendants must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which establish the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2548. Defendants need not negate plaintiff's claim or disprove plaintiff's evidence, but rather, defendants' burden is to show that there is no evidence in the record to support plaintiff's claim. Plaintiff, as the nonmoving party, must go beyond the pleadings and by way of affidavits or "depositions, answers to interrogatories, and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

■ Summary judgment is not appropriate if there exists a genuine material factual issue such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–251, 106 S.Ct. 2505, 2510–2512, 91 L.Ed.2d 202 (1986). In this regard, all evidence of the nonmoving party is deemed true and all reasonable inferences are drawn in favor of the nonmoving party. This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510. With these standards in mind, the court turns to the merits of defendants' motions.

## EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT CLAIM

The underlying basis of plaintiff's claim is the Eighth Amendment's prohibition against cruel and unusual punishment, as made applicable to the States by the Fourteenth Amendment. Plaintiff claims that under the standard set forth in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) defendants were "deliberately indifferent" to Redding's serious medical needs. Each defendant has moved the court for summary judgment in its favor on the grounds that the undisputed facts establish that they have not violated Redding's Eighth Amendment right to be free from cruel and unusual punishment. Defendants contend that their conduct falls woefully short of conduct amounting to the "deliberate indifference" to the serious medical needs of prisoners. Consequently, they argue that under the "deliberate indifference" standard of *Estelle* and other related cases, they are entitled to judgment as a matter of law. The court agrees.

In *Estelle,* the Supreme Court addressed the applicable standard for an Eighth Amendment claim by a prisoner alleging that he had been denied medical treatment and, therefore, subjected to cruel and unusual punishment. The Court noted that due to the deprivation of their liberty, prisoners must rely on the government to meet their medical needs, but that not every claim of inadequate medical treatment amounts to a cognizable Eighth Amendment claim. *Id.* at 104–105, 97 S.Ct. at 291–292. The Court held that:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 105–106, 97 S.Ct. at 291–292 (footnote omitted).

■ The facts of this case fail to approach the level of "deliberate indifference" to Redding's serious medical needs. The undisputed evidence establishes that Redding was provided immediate medical diagnosis, care, and treatment by the prison medical staff and by Staggs and the MRH staff. After being struck by the softball, Redding was taken to the prison medical center without undue delay where he was evaluated and cared for by both the nursing staff and physician's assistant on duty. More importantly, Marsh, who consulted by phone and was not present at the prison medical center, took the precautionary and diagnostic step of referring Redding to MRH for x-rays to determine the full extent of Redding's injuries. Marsh based his decision on the briefing he received from Franklin concerning Redding's condition after Franklin had completed a thorough visual and physical examination of Redding. After Redding arrived at MRH, he was cared for and treated by the MRH staff and Staggs, who made arrangements to transfer Redding to OMH once it was discovered (by way of x-rays) that Redding had a skull fracture. The transfer

to OMH was necessary to treat Redding further because OMH, unlike MRH, is a facility with neurosurgical capabilities. During the course of his stay at MRH, Redding was monitored and observed and various measures, in the form of medications, catherization, and ventilation, were undertaken to treat Redding and control the complications which were manifesting themselves.

Given the undisputed treatment above outlined, no arguable Eighth Amendment claim can be recognized by the court. At best, plaintiff can only claim that the treatment provided amounted to a difference in medical judgment as to proper measures which should have been taken to diagnose and care for Redding's injuries. This is not a case where medical personnel took no action to treat an injured prisoner. Rather, the evidence conclusively establishes that Marsh and Staggs acted in accordance with the exercise of their best medical judgment in diagnosing and treating Redding's injuries. While other physicians may have undertaken to handle Redding's situation differently, the court is only concerned with the actions or inaction of Marsh and Staggs and the question of alternative procedures is a question directed towards a negligence claim. "Deliberate indifference", not negligence, is the applicable criterion for plaintiff's Eighth Amendment claim. A mere difference of opinion over the adequacy of medical treatment provided cannot provide the basis for an Eighth Amendment claim. *El'Amin v. Pearce*, 750 F.2d 829 (10th Cir.1984); *Jones v. McCracken*, 562 F.2d 22 (10th Cir.1977); *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976); *Coppinger v. Townsend*, 398 F.2d 392 (10th Cir.1968). As stated by the Tenth Circuit Court of Appeals:

> We need not decide whether denial of medical care to prisoners in reasonable need thereof is sufficient to sustain a claim under § 1983 because in the instant case the allegations of the complaint show that medical care has been furnished. The allegation that the needed medication has been "cancelled" shows that a difference of opinion exists between the lay wishes of the patient and

the professional diagnosis of the doctor. The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983.

*Id.* at 394. Courts do not sit to evaluate and find fault with the medical judgments and decisions made by prison medical professionals in diagnosing and treating prisoners. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 763 (3rd Cir.1979). Consequently, to the extent that plaintiff is alleging that the treatment Redding received was constitutionally deficient, the court finds that plaintiff has failed to show that there are any genuine issues of material fact for trial and defendants are entitled to summary judgment in their favor.

Plaintiff, however, argues that this is not an action based on a constitutional analysis of the quality or type of treatment provided Redding, but rather, that the *timing* of the treatment provided made the otherwise adequate treatment constitutionally deficient. It is plaintiff's contention that the decisions concerning where to transfer Redding, so that he could receive proper medical care, were based on his status as an inmate. Plaintiff claims that Redding's medical condition dictated that he should have been transferred to a facility closer to the OSP medical center than was OMH. Specifically, plaintiff claims that the hospital in Muskogee, Oklahoma, is approximately one hour closer than OMH to the OSP medical center. Further, plaintiff claims defendants made the decision to transfer Redding to OMH without regard for his medical condition and with full knowledge that it would take twice as long for him to receive the necessary treatment. Plaintiff maintains that these status based decisions rendered the treatment Redding received untimely and therefore violative of the Eighth Amendment's "deliberate indifference" standard. The court does not agree.

Plaintiff cites a recent Tenth Circuit case arising out of this court, *Reed v. Dunham,*

893 F.2d 285 (10th Cir.1990), to support the claim of untimely treatment. Reed was an inmate who filed a § 1983 claim alleging, among other things, that he was denied proper and speedy medical treatment following an attack by other inmates which resulted in Reed receiving four stab wounds. Reed claimed that he was not afforded treatment for his wounds for nearly two hours. The Tenth Circuit found that Reed's complaint asserted a claim based on the prison's delay in furnishing medical care and not a claim based on difference of opinion over the quality or type of care provided. The Court found that Reed's allegation was credible and that it should not have been dismissed as frivolous under 28 U.S.C. § 1915(d). The Court found that the two hour delay had not been adequately explained and cited various cases providing for Eighth Amendment claims based on the timeliness of providing adequate medical treatment.

*Reed* provides no solace for plaintiff under the facts herein. First, it should be noted that *Reed* involved a decision on a motion to dismiss the complaint as frivolous under § 1915(d). In fact, the Court noted the distinction between a such a motion to dismiss and a motion for summary judgment and did not discount the availability of a dispositive motion for summary judgment under the proper circumstances. *Id.* at 287 n. 2. Second, taking the allegations of Reed's complaint as true and based on the record before it, the Court could only find that there did indeed exist an unexplained two hour absence of any medical treatment. In the instant case, however, the record conclusively establishes that Redding was provided medical care throughout the entire period of time he was under the control of the defendants.

Plaintiff's attempt to generate a fact issue out of the decision to transfer Redding to OMH as opposed to a closer hospital with neurosurgical capabilities is without merit. Again, this decision evinces no "deliberate indifference" to Redding's serious medical needs. The undisputed facts are that a decision *was made* to transfer Redding to a facility where he could receive the necessary medical attention his then existing condition warranted. Any argument made by plaintiff, which has as its foundation the requirement of the utilization of the closest medical facility, is in reality an argument finding support only under a negligence theory. This is especially true in this case where the nature, quality, and availability of the treatment at the Muskogee hospital was unknown to defendants. Plaintiff would have the court sanction a legal theory whereby prison medical officials are not only required to make a decision concerning a particular procedure or course of treatment, but also that they make the *right* decision as subsequent events may later dictate. No construction of the Eighth Amendment so requires.

The undisputed evidence before the court establishes that Redding was provided medical treatment and that the decisions made by Marsh and Staggs concerning the course and scope of Redding's treatment do not amount to "deliberate indifference" to Redding's medical needs. Accordingly, the court finds that there are no genuine issues of material facts as to plaintiff's Eighth Amendment claim and that all defendants are entitled to judgment as a matter of law.

## QUALIFIED IMMUNITY

Marsh also claims qualified immunity. The affirmative defense of qualified immunity is available to all government officials. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This immunity is an immunity from suit and not merely a defense to liability. *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 644–45 (10th Cir. 1988) and *England v. Hendricks*, 880 F.2d 281 (10th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990). The question of whether a defendant is entitled to qualified immunity is a legal question for the court. *Losavio*, 847 F.2d at 646. The test the court must apply is an objective one which inquires into the objective reasonableness of the official's actions. *Harlow*, 457 U.S. at 816, 102 S.Ct. at 2737. Government officials performing discretionary functions will not be held lia-

ble for their conduct unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. In this context, the law to be examined is the law existing at the time of the official's actions. *Id.*

█ It is plaintiff's burden to show that the law was clearly established. *Lutz v. Weld County School Dist.*, 784 F.2d 340, 342–43 (10th Cir.1986). The Tenth Circuit Court of Appeals has stated that "the test of what is 'clearly established law' should be determined in a particularized sense, that is, that the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Garett v. Rader*, 831 F.2d 202, 204 (10th Cir.1987) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). The rule for evaluating the factual correspondence between the established law and the case at hand, is one "requiring some but not precise factual correspondence and demanding that officials apply general, well developed legal principles." *Garcia v. Miera*, 817 F.2d 650, 657 (10th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988).

█ Under the facts herein, it cannot be said that Marsh violated the clearly established rights of Redding.[4] The "deliberate indifference" standard of *Estelle* was clearly established at the time of Marsh's conduct. Redding clearly had the right to adequate medical treatment at the time of his injuries. Under *Estelle*, Redding was entitled to be free from cruel and unusual punishment in the form of exhibited "deliberate indifference" to his serious medical needs. Likewise, Redding was entitled to timely treatment. *See generally Cooper v. Dyke*, 814 F.2d 941 (4th Cir.1987); *Aldridge v. Montgomery*, 753 F.2d 970 (11th Cir.1985); *Wood v. Worachek*, 618 F.2d 1225 (7th Cir.1980). Marsh's decision to have x-rays of Redding taken before he was transported to either CSH or OMH, or any other hospital, was objectively reason-

able under the "deliberate indifference" standard. At the time Marsh made his decision Redding had been treated by the OSP staff and Franklin, and Marsh had been fully apprised of Redding's condition by Franklin. Marsh exercised his medical judgment in sending Redding for x-rays and such a decision, even when evaluated in light of the alternatives available to Marsh, did not violate Redding's clearly established right to adequate medical care. Even if Marsh sent Redding for x-rays, as opposed to some other treatment and diagnosis, solely because OSP required all inmates with head injuries to be sent to MRH, such affirmative action of providing treatment and diagnosis could hardly have been recognized as a violation of Redding's clearly established right to medical care. Additionally, even if it is assumed that Marsh dictated, in accordance with OSP policy, that Redding be taken to OMH as opposed to a closer hospital, Marsh's decision in this respect was also objectively reasonable in light of the acknowledged care Redding could receive at OMH.

The court finds that Marsh is entitled to qualified immunity in that his conduct did not violate the clearly established constitutional rights of which reasonable persons would have known.

### PENDENT STATE CLAIMS

█ Plaintiff has asserted pendent state claims of negligence against Marsh and Staggs. The court's decision to retain jurisdiction over a state law claim is discretionary where all federal claims have been dismissed and where an independent basis of jurisdiction, such as diversity of citizenship, does not exist. *Curtis Ambulance v. Shawnee City Board of County Commissioners*, 811 F.2d 1371, 1386 (10th Cir. 1987); *Key Financial Planning Corp. v. ITT Life Insurance Corp.*, 828 F.2d 635, 643–44 (10th Cir.1987); *Pitts v. Turner and Boisseau Chartered*, 850 F.2d 650, 653 (10th Cir.), *cert. denied*, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1988). While dismissal of state law claims is not auto-

---

4. Staggs has not moved the court for an entry of summary judgment in his favor on the basis of qualified immunity and the court expresses no opinion in that regard.

matic where all federal claims have been dismissed before trial, *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the court finds dismissal appropriate herein. Accordingly, plaintiff's pendent state law claims against Marsh and Staggs are dismissed.

## CONCLUSION

Based on the foregoing reasons, the court finds there are no genuine issues of material fact as to plaintiff's Eighth Amendment claim under § 1983 and defendants are entitled to judgment as a matter of law on such claim. Also, the court finds Marsh is entitled to qualified immunity from suit. Finally, the court finds plaintiff's pendent state law claims for negligence should be dismissed.[5]

IT IS SO ORDERED.

---

**5.** The court has examined the various other bases asserted by defendants in support of their motions and finds that summary judgment and/or dismissal are inappropriate on those bases.