968 F.2d 1218
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Levi SUMMAGE, Plaintiff-Appellant,
v.
Stephen MCEVERS, Warden, Mary Spinner Jones, Hospital
Administrator, Daria Mccarthy Smith, Assistant
Warden, Rex Mallecoote, Correctional
Officer, G. Ghearing, M.D.,
Defendants-Appellees.
 No. 90-3323.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 16, 1992.*
Decided June 30, 1992.
 
 Before CUDAHY, COFFEY, Circuit Judges and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 Levi Summage filed this civil rights suit pursuant to 42 U.S.C. § 1983 seeking money damages from various officials at the Logan Correctional Center in Lincoln, Illinois, where he is incarcerated. Summage claimed that various prison personnel had conspired to inflict on him cruel and unusual punishment in violation of the Eighth Amendment. The district court granted the defendants' motion to dismiss in accordance with Fed.R.Civ.P. 12(b)(6). Summage now appeals that decision. We affirm.
 
 I. FACTS
 
 2
 When reviewing a 12(b)(6) dismissal, we assume the truth of all facts alleged in the pleadings, making all possible inferences in favor of the plaintiff. Webster v. New Lenox School Dist. No. 122, 917 F.2d 1004, 1005 (7th Cir.1990). What follows are the salient facts alleged in the complaint and documented in medical records that Summage appended to the pleadings as exhibits.
 
 
 3
 When Summage first sought treatment for a back condition at the prison hospital on April 21, 1986, he indicated to Dr. Ulrich (an attending physician not named in this suit) that he had been experiencing pain for the prior two months. Despite the doctor's prescription of Motrin, Summage's discomfort persisted. He again visited the prison hospital on May 28, 1986, at which time a paramedic prescribed aspirin and scheduled an appointment with Dr. G. Ghearing. Between May 28 and his scheduled appointment with Ghearing on June 12, 1986, Summage returned to the health care unit on May 29, June 4, and June 11.
 
 
 4
 Upon examining Summage, Ghearing diagnosed his condition as possible low back pain syndrome with "ridiculopathy"[1] [sic], probable psychogenic[2] pain, and muscle strain. Ghearing recommended further doses of aspirin, even though Summage complained that this treatment had failed to alleviate his pain. In addition, Ghearing prescribed Soma[3] and ordered that X-rays be taken. After next seeing Summage on June 17, 1986, the doctor approved a one day "lay-in", continued him on Soma, and referred him to an orthopedic surgeon who could determine whether the patient was suffering from degenerative disc disease, as Ghearing now suspected.
 
 
 5
 By the time Summage's CT scan results were reported on July 14, 1986, he had consulted four more times with either Ghearing or Ulrich, complaining to them of continuing pain in his back and numbness in his left leg. On successive visits, the doctors issued Summage crutches, authorized a "slow walk" pass, stopped his recreational activities, granted leave from work, provided a wheelchair, and arranged for him to take his meals at the hospital unit. After discovering a herniated disc on Summage's CT scan results, Ulrich performed surgery at Abraham Lincoln Memorial Hospital on July 28, 1986. According to the record, Summage appears to have enjoyed a complete and uneventful recovery and reports that he is "doing real good."
 
 II. ANALYSIS
 
 6
 Summage alleges that by conspiring to deprive him of necessary, timely medical intervention until his condition became critical, the appellees violated his rights under the Eighth Amendment. Although the appellant arguably asserts that they also violated substantive due process rights conferred by the Fourteenth Amendment,[4] we assess his claim with respect to the Eighth Amendment alone.[5]
 
 
 7
 The gravamen of Summage's complaint is that Ghearing negligently failed to diagnose his herniated disc for approximately three months, during which time the doctor prescribed a number of different medications and measures that failed to reduce the appellant's pain. This omission, Summage claims, amounted to cruel and unusual punishment. We disagree. An orthopedic surgeon should not be fast with the knife but should initially prescribe a conservative course of treatment through bed rest and medication, opting to perform surgery only as a last resort. This the doctor did.
 
 
 8
 The Eighth Amendment, as applied to the states through the Fourteenth, forbids the state or its agents from inflicting on prisoners cruel and unusual punishment. Wilson v. Seiter, 111 S.Ct. 2321, 2323 (1991). Cf. Hudson v. McMillian, 60 U.S.L.W. 4151, 4152 (U.S. Feb. 25, 1992) (excessive physical force against a prisoner may constitute cruel and unusual punishment even if the inmate does not suffer significant injury). Denial of medical treatment will rise to the level of cruel and unusual punishment if a prisoner can establish that prison officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Negligence on the part of a physician in diagnosing or treating a medical condition, however, fails on its own to establish deliberate indifference. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106. Beyond suggesting that Ghearing and the other prison officials belatedly recognized his disc problem, the facts alleged in the complaint do not support the conclusion of the appellees' deliberate indifference.
 
 
 9
 On the contrary, the facts alleged show that Summage ultimately received adequate medical attention on the several occasions he visited the prison hospital. Between his initial complaint to Ulrich in April 1986 and the successful surgery in July of that year, Summage had numerous contacts with Ghearing and others on the medical staff. Far from exhibiting deliberate indifference, prison hospital personnel attended to the appellant's medical needs on at least a dozen different occasions during the time period in question.
 
 
 10
 Without making an adequate claim that Ghearing violated his constitutional rights, Summage cannot demonstrate that any of the other appellees engaged in a conspiracy to do so. A civil conspiracy consists of two essential elements: 1) an agreement by two or more persons acting in concert to commit an unlawful action (or a lawful act by unlawful means) that will result in an injury against another person; and 2) an overt act that results in damages. Richardson v. City of Indianapolis, 658 F.2d 494, 500 (7th Cir.1981), cert. denied, 455 U.S. 945 (1982) (citing Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754 (1980)).
 
 
 11
 The complaint fails as a matter of law to state a claim--as required by the first part of the Richardson test--that any of the appellees ever agreed to deny or delay attention to Summage's medical needs, deliberate indifference aside. Alleged failure by the appellees to take appropriate steps in response to Summage's medical condition by itself does not make out a claim that a conspiracy was afoot. Nor does the individual appellees' mere knowledge of that condition establish that they decided to hatch a scheme. In sum, Summage's allegation of conspiracy is conclusory.
 
 
 12
 Even absent an actual conspiracy, an Eighth Amendment claim against the individual appellees also is without merit. Assuming that Ghearing's actions were in fact tortious, neither supervisors nor employers are vicariously liable for the torts of employees in section 1983 actions. McKinnon v. City of Berwyn, 750 F.2d 1383, 1390 (7th Cir.1984), cert. denied, 493 U.S. 809 (1989).
 
 
 13
 Moreover, under the lower tort standard of recklessness, a prison supervisor can be found liable for inmates' injuries under the Eighth Amendment only if the official has actual knowledge of an easily preventable, impending harm and consciously, culpably refuses to prevent it from occurring. McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir.1991), cert. denied, 60 U.S.L.W. 3598 (U.S. Mar. 3, 1992) (citing Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir.1985)). The record suggests that Summage mentioned his displeasure with the course of his treatment, either orally or in writing, to various prison officials, including McEvers (the Warden), Smith (the Assistant Warden), Jones (the Hospital Administrator), and Mallecoote (the correctional officer). But the pleadings do not sufficiently claim either that the prison administrators had knowledge of an imminent harm to Summage, or that they intentionally refused to stop its occurrence. Since prison administrators lack requisite medical training, their deferral to experts on medical issues is not reckless, but entirely appropriate. McEachern v. Civiletti, 502 F.Supp. 532, 534 (N.D.Ill.1980) (Administrators' reliance on the opinion of their medical staff as to the proper course of treatment for an inmate insulates them from any liability under the Eighth Amendment.). See also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir.1977), cert. denied, 435 U.S. 917 (1978).
 
 
 14
 While the courts must regard even "inartfully pled" pro se complaints with less than the usual stringent standards, they also may dismiss them when it is " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Haines v. Kerner, 404 U.S. 519, 521 (1972) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The course of treatment described in the pleadings is inconsistent with the allegations that Ghearing acted with deliberate indifference to Summage's serious medical needs, that a conspiracy existed to deprive the appellant of medical care, or that the administrators' unwillingness to second-guess the medical staff violated the Constitution. Because Summage failed as a matter of law to state a claim upon which relief could be based, we agree that the district court properly granted the appellees' motion to dismiss.
 
 
 15
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Radiculopathy is a disease of the spinal nerve roots. STEDMAN'S MEDICAL DICTIONARY 1187 (5th ed. 1982)
 
 
 [2]
 Produced or caused by mental or psychic factors rather than organic factors. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1384 (27th ed. 1988)
 
 
 [3]
 Trademark for preparation of carisoprodol, an orally-administered skeletal muscle relaxant for the symptomatic management of acute, painful musculoskeletal disorders. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1546, 276 (27th ed. 1988)
 
 
 [4]
 While the complaint alleges violations of Summage's "U.S. Constitutional Rights", the plaintiff's "Motion in Adverse to Defendants [sic] Motion to Dismiss", R. 21, as well as his appellate brief, at 5, specifically refer to the Fourteenth Amendment's substantive due process protections
 
 
 [5]
 To the extent that the Eighth Amendment protects prisoners' rights, any substantive protections provided by the Fourteenth Amendment are largely duplicative. This court and the United States Supreme Court, however, have expressed three different approaches for assessing prisoner civil rights claims brought under both amendments
 One line of cases holds that Eighth Amendment protections and any corresponding substantive due process rights afforded by the Fourteenth Amendment are coextensive. Williams v. Boles, 841 F.2d 181 (7th Cir.1988) (attack of inmate by guards); Meriwether v. Faulkner, 821 F.2d 408, 415 n. 8 (7th Cir.1987) (medical care and prison facilities), cert. denied, 484 U.S. 935 (1987).
 Another group of cases states that any substantive due process guarantees for inmates are "at best redundant of that provided by the Eighth Amendment." Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989) (excessive force during arrest); Whitley v. Albers, 475 U.S. 312, 327 (1982) (shooting of inmate by prison officials).
 A third line suggests that the Eighth Amendment, not substantive due process, defines the duties of prison officials to prisoners. Daniels v. Williams, 474 U.S. 327, 340 n. 16 (1986) (Stevens, J., concurring) (negligence claim against jailer); K.H. Through Murphy v. Morgan, 914 F.2d 846, 849 (7th Cir.1990) (discussing different standards for assessing claims by prisoners and pre-trial detainees).