10 F.3d 810
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert Charles MOORE, also known as Robert Moore, Plaintiff-Appellant,
v.
David RILEY, Medical Director of Health Services,
Penitentiary of New Mexico, in individual and official
capacities; Rebecca Gardner, Nurse, Penitentiary of New
Mexico, in individual and official capacities; John Doe, a
doctor or physician's assistant, Penitentiary of New Mexico,
Defendants-Appellees.
 No. 93-2074.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 19, 1993.
 
 ORDER AND JUDGMENT[1]
 Before SEYMOUR, ANDERSON, and EBEL, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Robert Moore appeals the dismissal, pursuant to Fed.R.Civ.P. 12(b)(6), of his civil rights action, 42 U.S.C.1983, 1985, against David Riley, Medical Director of Health Services at the Penitentiary of New Mexico (PNM), and Rebecca Gardner, a nurse at that facility.[2] The suit names both defendants in their individual and official capacities, and seeks injunctive and declaratory relief, compensatory and punitive damages, and the appointment of an attorney.
 
 
 3
 Moore filed his action in New Mexico state court on August 22, 1989. The defendants removed the case to federal court on September 22, 1989. On December 2, 1992, Moore filed an amended complaint in federal court alleging two grounds for relief; however, in count I of his amended complaint Moore incorporates all the "facts" alleged in the complaint he filed in state court. Construing the two complaints together and liberally, it appears that Moore makes the following claims: (1) a denial of medical treatment in violation of the Eighth Amendment; (2) an unnecessary and wanton infliction of pain, in violation of the Eighth Amendment; (3) denial of medical care "as a means of further punishment to blacks as a part of a conspiracy to deny equal protection of the Constitution and Laws of the United States not only to all people accused of crimes but more so to black people whom the state presumes a right to treat as its agents and employes (sic) wish for their convenience and with total disregard of federal laws," in violation of the Fourteenth Amendment and 42 U.S.C.1985; and (4) that the two named defendants "conspired with prison and state officials to prevent access to the courts and thereby cover-up and conceal the denial of medical care and further to interfere with a defendant and witness before the court in denial of Fifth, Sixth, Ninth and Fourteenth Amendment Rights." Amended Civil Rights Complaint at 2, 3. The district court dismissed Moore's action for failure to state a claim. We affirm.
 
 
 4
 We review the sufficiency of a complaint de novo, taking the factual allegations in the complaint as true, and interpreting them in a light most favorable to the plaintiff. Brower v. County of Inyo, 489 U.S. 593, 598 (1989); Northington v. Jackson, 973 F.2d 1518, 1522 (10th Cir.1992). And, of course, we exercise a liberal interpretation of the pro se pleadings. Haines v. Kerner, 404 U.S. 519 (1972). However, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991) (citing cases). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." Id.
 
 A.
 
 5
 Moore's amended complaint and allegations in the district court generally allege the following facts. At about 9:30 p.m. on the night of July 4, 1989, Moore went to the prison infirmary for treatment of an open and bleeding cut. The nurse on duty, the defendant Rebecca Gardner, bandaged the wound using a medium-sized gauze bandage, taking no further action to stop bleeding. Gardner administered no pain medication, but instructed Moore to return in the morning. Approximately two hours after Moore returned to his cell he "observed that the bleeding had not stopped." He returned to the infirmary and Gardner rebandaged the cut using a larger gauze bandage. No other treatment for bleeding was applied, and no pain medication given. Gardner called the medical director, defendant David Riley, and discussed the situation with him on the telephone.[3] Following the call, Gardner told Moore that she and Riley "had determined that the problem could wait until morning." Moore returned to his cell.
 
 
 6
 About 8:30 a.m., the following morning, Moore was examined by Riley who sent him to St. Vincent's Hospital in Santa Fe, New Mexico. At the hospital Moore's cut was stitched closed with 27 stitches. Medical staff told Moore that the stitches "may not hold because the skin surrounding the wound had been allowed to die due to the delay in treatment." Moore remained at the hospital overnight and returned to the prison at noon the next day, July 6, 1989.
 
 
 7
 The following day, July 7, Moore went to the prison infirmary complaining of "a great deal of pain," and reported to the "medical staff" that the stitches "were indeed beginning to come out." The physician's assistant on duty prescribed Tylenol with codeine tablets (Tylenol 3). "This was the first pain medication given to [Moore] since his first reporting of the wound on July 4, 1989."
 
 
 8
 The next day, July 8, Moore went to the infirmary again and "told the physician's assistant that the stitches were continuing to come out." The physician's assistant called St. Vincent's hospital and scheduled a doctor's appointment for Moore eight days later, July 16, 1989. On that date, Moore was examined by a doctor at the hospital, and received a prescription for Codeine injections three times a day for pain.
 
 
 9
 At paragraph 26 of his complaint, Moore alleges that "[t]he actions of the Defendants stated in paragraphs 7 through 25 caused wanton and unnecessary infliction of pain, through deliberate indifference violating plaintiff's right to be free from CRUEL AND UNUSUAL PUNISHMENT as proscribed in the Eighth Amendment." In paragraph 27, Moore alleges:
 
 
 10
 27. The defendant's showed Deliberate Indifference when:
 
 
 11
 a)The plaintiff had a serious medical problem, and there was a long delay in the plaintiff getting to see a doctor.
 
 
 12
 b)The plaintiff was seen by medical personnel, but they were not qualified to exercise judgment about plaintiff's problem.
 
 
 13
 c)The plaintiff got to a doctor, but there were factors that interfered with the doctors (sic) exercise of judgment (i.e., the telephone).
 
 
 14
 d)The serious medical problem was so obvious that a lay person would easily recognize the necessity for a doctor's attention.
 
 
 15
 e)The failure to treat the injury resulted in considerable harm.
 
 
 16
 R. Vol I, tab 1, exh. A at 4-5.
 
 
 17
 As we recently stated in Miller v. Glanz, 948 F.2d 1562 (10th Cir.1991):
 
 
 18
 The Eighth Amendment, applied to the states through the Due Process Clause of the Fourteenth Amendment, prohibits infliction of cruel and unusual punishments on those convicted of crimes. In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court recognized that this prohibition applies to the inadequate provision of medical care to prison inmates. However, the Court held that because only the " 'unnecessary and wanton infliction of pain' " implicates the Eighth Amendment, a prisoner advancing such a claim must allege "deliberate indifference" to "serious" medical needs. Id. at 104, 106 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). In Wilson v. Seiter, 111 S.Ct. 2321 (1991), the Court clarified that the Eighth Amendment's deliberate indifference standard under Estelle has two components: an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. Id. at 2324. With regard to the subjective component, "allegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent ... diagnos[is]' simply fail to establish the requisite culpable state of mind." Id. at 2323; see also El'Amin v. Pearce, 750 F.2d 829, 832-33 (10th Cir.1984).
 
 
 19
 Id. at 1569. In Wilson v. Seiter, 111 S.Ct. 2321, 2326 (1991), the court explained that in medical needs cases deliberate indifference constitutes wantonness. The court then went on to state that:
 
 
 20
 There is no indication that, as a general matter, the actions of prison officials with respect to these nonmedical conditions are taken under materially different constraints than their actions with respect to medical conditions. Thus, as retired Justice Powell has concluded: "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in Estelle."
 
 
 21
 Id. at 2327 (quoting LaFaut v. Smith, 834 F.2d 389, 391-92 (4th Cir.1987). Finally, completing the definitional circle, in Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Court stated: "We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eighth Amendment." (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)).
 
 
 22
 Applying these standards, and after a careful review of the record, we conclude that Moore's complaint states no Eighth Amendment claim against Riley or Gardner upon which relief can be granted.
 
 
 23
 Nothing about Moore's core allegations states a culpable state of mind on the part of either defendant. At most, Moore is claiming bad judgment.
 
 
 24
 It is well settled that negligence, even gross negligence, does not meet the deliberate indifference standard required for a violation of the Eighth Amendment's cruel and unusual punishment clause. Estelle v. Gamble, 429 U.S. at 104-05; Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir.1980), cert. denied, 450 U.S. 1041 (1981). Deliberate indifference requires "a higher degree of fault than gross negligence." Berry v. City of Muskogee, 900 F.2d 1489, 1495 (10th Cir.1990). Furthermore, a difference of opinion between the prison's medical staff and the inmate does not support a claim of cruel and unusual punishment. Ramos v. Lamm, 639 F.2d at 575; McCracken v. Jones, 562 F.2d 22 (10th Cir.1977), cert. denied, 435 U.S. 917 (1978); Smart v. Villar, 547 F.2d 112 (10th Cir.1976).
 
 B.
 
 25
 None of Moore's remaining allegations, including those of conspiracy, denial of access to the courts, denial of equal protection, racial bias, and so forth, are supported by factual allegations of any kind. Bare conclusory statements, including those alleging racial motivation, do not support a cause of action. Hall v. Bellmon, 935 F.2d at 1110.
 
 
 26
 Furthermore, Moore's own allegations belie his conclusory statements of intolerance, second class treatment, conspiracy, and so on. According to his complaint, Moore was never denied a requested visit to the prison infirmary and never turned away when he went to the infirmary. He was examined first thing in the morning following the night of the incident in question and given hospital care. When he complained of pain on July 7, he was given pain killers at the prison infirmary; and, on the 8th, when he complained again, he was given an appointment with a physician. That physician examined him eight days later and apparently found no need for any further treatment, and no adverse effects. The doctor did prescribe further and, apparently, stronger pain killers for Moore, for an undisclosed period of time.
 
 
 27
 More to the point, Moore does not allege that Caucasian, Hispanic, or other inmates were routinely treated differently than African-American inmates with respect to any particular kind of medical treatment or attention at the infirmary. And, finally, although Moore asserts a conspiracy to deny him access to the courts, he does not show that he had no access to a law library or was unable to file papers in court. Indeed, when the district court issued an order to show cause Moore responded promptly.
 
 C.
 
 28
 For the reasons stated, the order of the district court dismissing Moore's complaint is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 The complaint filed in state court by Moore also named a "Doe" as a party. In his amended federal complaint Moore identifies the Doe as Director Riley, and only two defendants are named, Gardner and Riley
 
 
 [3]
 In their answer to the complaint the defendants deny that Riley was the individual Gardner consulted by telephone and also deny that Riley was the individual who examined Moore the following morning. R. Vol. I, tab 18, 1/2 1/214, 18. However, our review of the complaint requires us to take the allegations as true